STATE, EX REL. DELILAH RUTLEDGE, RELATOR, V. H. M. EATON, COMMISSIONER OF PUBLIC LANDS AND BUILDINGS, RESPONDENT.*

FILED JANUARY 17, 1907. No. 14,696.

1. **School Lands: SALE: APPRAISAL.** By the provisions of section 19, art. I, ch. 80, Comp. St. 1881, the county treasurer, county judge and county clerk are required, in appointing appraisers to value school lands for the purpose of sale, to act together or collectively. An appointment otherwise made is invalid.

2. ———: ———: ———. Where a lessee of school land exercises his option and makes an application to purchase, the board of educational lands and funds may, in the exercise of a reasonable discretion, reject the appraisement, if it appears that the amount of such appraisement is so much less than the actual value of the

---

* Writ of mandamus allowed. See opinion, p. 208, *post.*

land as to lead to the conclusion that the appraisement was the result of fraud or mistake.

3. **Mandamus: SCHOOL LANDS: SALE.**  Where a mandamus is sought to compel the commissioner of public lands and buildings to execute a contract of sale for school lands, the writ will be denied unless it is clear that the lessee has substantially complied with all of the provisions of the law, and the board of educational lands and funds has been guilty of an abuse of discretion in rejecting the application to purchase.

ORIGINAL application for a writ of mandamus to compel respondent to execute to relator a certificate of purchase for 80 acres of school land. *Writ denied.*

*C. H. Denny,* for relator.

*Norris Brown, Attorney General,* and *W. T. Thompson, contra.*

BARNES, J.

This is an original application to this court for a writ of mandamus to compel the commissioner of public lands and buildings to execute to the relator a certificate of purchase for 80 acres of school land in Jefferson county. The petition for the writ shows that, under the provisions of section 19, art. I, ch. 80, Comp. St. 1881, in force at the time the lease was executed, she is entitled as lessee to exercise her option to purchase, and this is not disputed by the respondent. The other principal allegations of the petition are, that the relator, at the time of the commencement of the action, was the owner and holder of leases from the state for the land in controversy; that on the 10th day of December, 1905, the relator applied to the county treasurer of Jefferson county to have the land appraised for the purpose of sale, and deposited at that time with such county treasurer the sum of $6; that an appraisement was made fixing the value of the land at $1,400, and on January 5, 1906, the relator paid the county treasurer the sum of $140, made a written surrender of her lease to the respondent, performed such other acts as were required

of her by law, and thereupon demanded of the respondent a certificate of sale of the land in question, which demand was refused. The respondent alleges as a defense to the application for the writ that the land was grossly under-valued; that its just and full value, at the time it was sought to be purchased from the state, was $2,400; that, on the application of the relator to purchase, the board of educational lands and funds made the following order relating thereto: "The following applications to purchase school land by lessees, together with appraisements here-tofore referred to the commissioner for review, were sub-mitted: S. E. $\frac{1}{4}$, N. E. $\frac{1}{4}$ and N. E. $\frac{1}{4}$ of S. E. $\frac{1}{4}$ 36-4-2, and it was moved that the same be rejected on account of insufficiency of appraisements, and the motion was agreed to."

It is contended on the part of the relator that the board of educational lands and funds had no power or dis-cretion to reject her application, but was compelled to execute and deliver to her a contract of purchase at the price fixed by the appraisement. The respondent, however, contends; First, that the relator had not performed the conditions which would entitle her to a certificate of pur-chase prior to the commencement of this action; second, the value at which the relator seeks to purchase the land is not its just and full value; third, the board of educational lands and funds have the right to protect the state, and refuse an appraisement when below the actual value of the land.

An examination of the record discloses that the respondent's first objection is not well founded. It appears that, by the terms of her leases, the relator had the right to purchase the land in question at the time she made her application therefor; that she paid the cost of the appraisement, forwarded through the county treasurer one-tenth of the purchase price to the respondent, and stood ready to execute the notes in the manner provided by law, for the deferred payments, strictly in accordance with the provisions of the statutes relating thereto. There-

fore this objection to the issuance of the writ cannot be sustained.

The respondent's second objection, however, presents a more serious question. It appears from the record that, when the relator made her application to purchase the land, she served upon the county treasurer, the county judge and the county clerk of Jefferson county, separate notices of her application; that, thereupon, each of said officers, by a separate order, appointed an appraiser, and the appraisers who were so appointed made the appraisement upon which the respondent bases her right to a certificate of purchase. The original application made by the respondent to the county judge of Jefferson county is in the record, and has indorsed thereon the following: "In accordance with the above application I hereby appoint Isaac S. Gardiner, as such appraiser. Dated Fairbury, Neb., Dec. 13, 1905. (Signed) C. C. Boyle, County Judge. (Seal of the county court.)" On the original application made to the county clerk of said county, we find the following: "In accordance with the above application, I hereby appoint Wesley W. Simmons, as such appraiser. Dated Fairbury, Neb., Dec. 1905. (Signed) F. A. Houston, County Clerk. (Seal of Jefferson County.)" While there are affidavits in the record stating that "said officers, acting together, appointed the appraisers," yet we deem them insufficient to overcome the evidence furnished by the original notices, since they merely state a conclusion, and do not state the facts relating to such appointment. It further appears that Henry T. Bowers, the appraiser who was appointed by the county treasurer, was not a disinterested party. His testimony shows that his son was married to the relator's daughter; and, while it may be said that he was not interested in the land, and so was a disinterested party, yet he can hardly be said to be disinterested in the result of the appraisement. It was the duty of the county treasurer, county judge and county clerk, in appointing the appraisers, to act together, or collectively. That their action was not the collective or

concurrent action of the three officers together can scarcely be doubted. The appointment was therefore contrary to the provisions of law; for section 19, art. 1, ch. 80, Comp. St. 1881, provides: "The county treasurer, together with the county clerk and county judge, shall appoint three disinterested freeholders of such county, whose duty it shall be to appraise the lands designated at their just and full value."

The rule is fundamental that a writ of mandamus will not be granted unless the right of the relator thereto is clear. *State v. Nelson*, 21 Neb. 572; *State v. Bowman*, 45 Neb. 752. And, where it appears that the provisions of the law on which the relator bases his right to the writ have not been substantially complied with, the writ will be denied. There is, however, another and more cogent reason why the writ should not be allowed. It is contended on the part of the respondent that the board of educational lands and funds has a right, and it is its duty, to exercise a reasonable discretion to protect the rights of the state; that it can disapprove of an appraisement, and require the respondent to refrain from entering into the contract, when it is shown that the appraisement is grossly below the actual value of the lands sought to be purchased. Section 1, art. VIII of the constitution, defines the powers and duties of the board of educational lands and funds, as follows: "The governor, secretary of state, treasurer, attorney general and commissioner of public lands and buildings shall, under the direction of the legislature, constitute a board of commissioners, for the sale, leasing and general management of all lands and funds set apart for educational purposes, and for the investment of school funds, in such manner as may be prescribed by law." By an act passed for that purpose, the legislature has prescribed the manner in which such powers and duties shall be exercised. The power thus conferred upon the board carries with it a duty to exercise a reasonable discretion in executing the trust with which it stands charged. It will hardly be contended, where the appraise-

ment appears to be so grossly inadequate as to amount to a constructive fraud, that the board would have no discretion and could not refuse to authorize the sale of the lands sought to be purchased thereunder. A mere statement of that question is its own solution, and, while we are not prepared to say that the appraisement in the case at bar is so low as to be fraudulent, yet it seems clear that such appraisement is from $400 to $600 less than the actual value of the land, which might reasonably be regarded by the board, in the exercise of a reasonable discretion, as being the result of mistake. This of itself is sufficient to require the board to exercise its discretionary power and reject the appraisement.

In *State v. Scott,* 18 Neb. 597, it was said: "The board of educational lands and funds is a trustee for the sale and leasing of the land set apart for the support of educational institutions, and to justify the interference of a court there must be an abuse of the trust. This question was before this court in *State v. Scott,* 17 Neb. 686, and it was held that a writ would not be granted against the board unless there was an abuse of discretion, which, in our view, there was not in this case. It is the duty of the board to sell or lease the educational lands of the state for the highest price possible to be obtained, and increase and protect by all honorable means, the funds for the support of the educational institutions and so long as the board is faithfully performing its duty in that regard, this court will refuse to interfere." In *State v. Scott,* 17 Neb. 686, it was held that, "where a mandamus is sought to compel the board of public lands and buildings to accept the highest bid for the leasing of certain school lands, the writ will be denied unless it is clear that there is an abuse of discretion, and that the sum bid is the full rental value of the lands." The rule thus stated seems applicable to the present case. From the evidence it appears that the land is worth at least $400 more than the value fixed by the appraisements, and this of itself would seem to require the

board to reject the appraisements, and would justify the respondent in refusing to execute the contract of sale.

For the foregoing reasons, the writ should be denied. It is urged, however, by the relator that her leases have expired since the commencement of this proceeding, and unless the writ is allowed her rights thereunder may be forfeited. This should make no difference with her right to purchase the land at its actual fair valuation, and it is our opinion that she still has the right to renew her application therefor; that upon a fair and just appraisement, and a tender to the respondent of one-tenth of the amount thereof, together with her notes properly and legally executed for the deferred payments, she will be entitled to receive her contract of purchase, and that thereupon this proceeding will be dismissed at her costs.

JUDGMENT ACCORDINGLY.

The following opinion on a new application for writ of mandamus was filed June 7, 1907. *Writ allowed:*

School Lands: SALE: APPRAISAL. The board of educational lands and funds is vested with a discretionary power in passing on appraisements of school lands under an application of a lessee to purchase; but such discretion is a reasonable one, and must be fairly and reasonably exercised, and the arbitrary or unreasonable refusal of the board to approve of a fair appraisement will not justify the commissioner of public lands and buildings in refusing to issue a certificate of purchase which the lessee would otherwise be entitled to receive.

BARNES, J.

When our former judgment in this case was rendered, we declined to dismiss the action, and purposely retained jurisdiction of the matters in controversy, so as to make such further orders herein as would be found necessary to finally determine the right of the relator to purchase the land in controversy. This is fairly disclosed by our opinion, *ante*, p. 202. Since that time the relator has renewed her application, has caused the land to be reappraised, has

complied strictly with all of the requirements of the statute which entitle her to a contract of purchase, and has demanded the same of the relator, who has again refused to comply with her demand. She has, by motion, renewed her application for the writ, and the respondent now justifies his refusal on the ground that the board of educational lands and funds is of the opinion that the new appraisement is too low and has directed him not to issue a certificate of purchase thereon.

From the evidence before us it appears that the land in question was valued by the first appraisement at $1,400; that the respondent, being of the opinion that the appraisement was too low, caused the land to be reappraised for and on behalf of the state, and the amount of such appraisement was $1,800; that the board of educational lands and funds caused that appraisement to be set aside, and the respondent refused to issue a certificate of purchase to the relator thereunder; that the application for a writ of mandamus was thereafter made, and on the issues joined the testimony of a large number of witnesses, both for the relator and the state, was taken as to the value of the land in controversy. By this evidence it is shown that the value of the land was between $1,400 and $2,000; the state contending that it was worth $2,000, while the relator insisted that it was worth only $1,400. It was our opinion that the evidence then taken showed the value to be somewhere between $1,800 and $2,000, and in consideration of that fact we declined to issue the writ, holding that the board was invested with a reasonable discretion in the matter, and could reject an appraisement and refuse to order the respondent to issue a certificate of purchase of school lands, where it appeared that the appraisement was so much less than the fair value of the land as to amount to a constructive fraud, or to make it clearly appear that the value fixed thereby was the result of a mistake. It now appears, by the new appraisement, that the value of the land is $1,600. It is

conceded that the new appraisers are men well qualified and competent to judge of the value of real estate in Jefferson county, in the immediate vicinity of the land in question, and in fact of the land itself; that they are men of excellent character and good judgment, and would in no way favor either party at the expense of right and justice. So we are constrained to hold that the value thus fixed is the fair and reasonable value of the land in question.

The respondent, however, insists that the order of the board is final and conclusive as to the rights of both parties, and compels him to reject the application. We cannot so hold. It must be conceded, however, that where the board, exercising a reasonable discretion in such a matter, has determined that the appraisement is too low, and it appears that such judgment or determination is well founded, then its order would justify the respondent in refusing to execute a contract of purchase, and would be a complete defense to a petition for a mandamus to compel him to perform that act. But, where it appears, as it does in this case, that the appraisement represents the fair value of the land, that the difference between the several appraisements, if any, is so small in amount as to be readily accounted for by an honest difference of opinion on that question, the board cannot reject the appraisement and arbitrarily direct the respondent not to execute the contract of purchase.

Upon a careful consideration of the evidence and of the whole record before us, we are of opinion that the relator is now entitled to the relief prayed for, and a writ of mandamus will issue directing the respondent to execute and deliver to the relator a certificate of purchase as prayed. The relator is required to pay the costs of her first application, and the costs of the present proceeding will be taxed to the respondent.

JUDGMENT ACCORDINGLY.