STATE EX REL. GRAVELY, RELATOR, *v.* STEWART ET AL.,
RESPONDENTS.

(No. 3,408.)

(Submitted December 1, 1913.   Decided December 29, 1913.)

[137 Pac. 854.]

*Mandamus—School Lands—Sales—Approval and Confirmation
—Inadequacy of Price—State Board of Land Commissioners—
Discretion.*

School Lands—Federal Grant—Trust—State Board of Land Commissioners
—Nature of Duty.
1.   The land grant made by the federal government to the state for
school purposes constitutes a public trust, which the state board of land
commissioners must so administer as to secure the largest measure of
legitimate advantage to the state.

Same—Sales—Approval and Confirmation—Discretion—*Mandamus.*
2.   In determining whether it shall or shall not confirm a sale of state
school lands, the state board of land commissioners acts *quasi*-judicially,
and may not, in the absence of abuse of its discretion, be compelled by
*mandamus* to confirm a sale made by the register at a price which the
board deems inadequate.

Same—Sales—Not Complete Without Approval.
3.   Bidders at sales of state school lands take the land bid in by them,
with the knowledge that the sale is not complete, under section 40,
Chapter 147, Laws of 1909, without the approval and confirmation of the
state board of land commissioners, and that in its action on a particular
sale it will be governed by the interests of the trust which it is charged
to administer.

Original application by the state, at the relation of C. A.
Gravely, for a writ of mandate to compel S. V. Stewart, gov-
ernor, and others, as members of the state board of land com-
missioners, and Sidney Miller, as register of state lands, to
confirm a sale of state school lands and perform certain other
acts with reference thereto.   Proceedings dismissed.

*Mr. S. P. Wilson,* for Relator, submitted a brief, and argued
the cause orally.

*Mr. D. M. Kelly,* Attorney General, and *Mr. W. H. Poorman,*
Assistant Attorney General, submitted a brief in behalf of Re-
spondents, and argued the cause orally.

MR. JUSTICE SANNER delivered the opinion of the court.

On or about July 1, 1913, the state board of land commissioners made an order directing the sale of certain school lands, to be held at Deer Lodge, Powell county, on August 15, 1913. The sale was duly advertised, and included within the lands directed to be sold were three tracts of 160 acres each, in section 10, township 10 north, range 8 west. At the time and place set, the register of state lands appeared, and at public auction offered these tracts for sale in separate parcels. For them the relator herein made the highest and best bids, offering $10 per acre for one of said tracts, and $10.25 per acre for each of the others; and the said tracts were struck off to him by the register, acting as auctioneer. The relator paid to the register fifteen per cent of the purchase price, together with the fees for issuing the certificate of sale, which moneys were received by the register, who in turn delivered a receipt to the relator. Subsequently the relator made demand that a certificate of purchase be issued and delivered to him, but this was refused; thereupon he tendered and offered to the state board of land commissioners the full purchase price as bid by him, with interest, and offered to pay the appraised value of all surface improvements owned by former lessees, and at the same time demanded the issuance and delivery to him of deeds or patents to said tracts. But the state board, refusing to confirm the sale, canceled and disapproved it, rejected the relator's tender, and denied his demand. It is alleged in the petition that the sale was fair, the sums bid were equal to the value of the land, and that the actions of the board and of the respondents, as members thereof, were arbitrary, malicious, capricious and unjust.

In their reply the respondents state their position as follows: "That subsequent to the time when said land was offered for sale, and the said bid so made by said plaintiff, the said register made due report thereof to the state board of land commissioners, and that at a hearing subsequently had thereon, at which hearing said plaintiff was represented, the said state board of land commissioners was informed and believed, and still believes, that

the price so bid for said land by said plaintiff was inadequate, and was less than the real value of said land; that the same at a subsequent sale could be sold at a much greater price; that in fact at said hearing said board received offers in writing for said land at a price of $3 per acre in excess of the amount so bid at said sale, and, deeming it to the best interests of the state of Montana that said sale be not confirmed and in and by virtue of the authority so vested in said board by the provisions of section 40, Chapter 147 of the Session Laws of 1909, refused to confirm or approve the sale of said lands, and refused, and still refuses, to issue any deed of conveyance to said plaintiff for said land.' '

Upon the hearing it was established by evidence that the action of the board was prompted by the views set forth in the reply. No reason, however, was assigned for the entertainment of these views, except that the board had received a letter from one McGilvray offering $3 per acre or $1,440 more for the land, and believed that under the special circumstances it might, on a resale, secure as much as $30 per acre.

The question, then, is whether, under the circumstances stated, the peremptory writ of this court should issue as prayed by the relator, directing that the board confirm the sale to him and cause to be issued a certificate of purchase accordingly, directing that the board accept his tender of the balance of the purchase price and cause to be issued and delivered to him a deed or patent to the lands, and directing the governor to sign, the register to countersign, and the secretary to seal, such deed or patent. To this but one answer can be given—an unhesitating negative. The grant of lands for school purposes by the federal [1] government to this state constitutes a trust (*State ex rel. Bickford* v. *Cook,* 17 Mont. 529, 43 Pac. 928; *State ex rel. Dildine* v. *Collins,* 21 Mont. 448, 53 Pac. 1114; *State ex rel. Koch* v. *Barret,* 26 Mont. 62, 66 Pac. 504) ; and the state board of land commissioners, as the instrumentality created to administer that trust, is bound, upon principles that are elementary, to so administer it as to secure the largest measure of legitimate advantage

to the beneficiary of it. To that end, and of necessity, the board must have a large discretionary power over the subject of the trust; and therefore it has been expressly given "the direction, control, leasing and sale" of these lands, under such regulations and restrictions as may be prescribed by law. (Const., Art. XI, sec. 4.) Such "regulations and restrictions" as the legislature has seen fit to prescribe are embodied in Chapter 147, Session Laws of 1909, wherein we find the following provisions: The board shall have the direction and control of all lands belonging to the state, to manage the same as the best interests of the state shall require (sec. 1); the board may direct the sale of any state lands, except as provided in this Act, in such parcels as they shall deem for the best interests of the state (sec. 35); all sales of state lands shall be conducted by the register, but no land shall be sold for less than the minimum price of $10 per acre, nor for less than its appraised value (sec. 37); "all sales of state lands * * * shall be subject to the approval and confirmation by the state board of land commissioners, and no sale shall be deemed completed until after such approval and confirmation".

[2]  (sec. 40). That the board in proceeding under this statute, in determining whether it shall or shall not confirm a sale, acts *quasi*-judicially seems so obvious that the citation of authority ought not to be necessary. The matter has been before the courts, however, and with substantial uniformity of result, under conditions at all similar to those prevailing in this jurisdiction. (*Routt* v. *Greenwood etc. Land Co.*, 18 Colo. 132, 31 Pac. 858; *State ex rel. Reed* v. *Scott*, 18 Neb. 597, 26 N. W. 386; *State ex rel. Marsh* v. *Land Commissioners*, 7 Wyo. 478, 53 Pac. 292; *Miles* v. *Wells*, 22 Utah, 55, 61 Pac. 534; *State ex rel. Rutledge* v. *Eaton*, 78 Neb. 202, 110 N. W. 709.)

Since the board is a constitutional agency charged with the administration of a public trust, since it is vested with discretionary power in that behalf, and since its discretion is invoked whenever it is called upon to confirm or reject a sale, this court cannot compel it to exercise that discretion in any particular way. (*State ex rel. Harris* v. *District Court*, 27 Mont. 280,

70 Pac. 981; *State ex rel. King* v. *District Court,* 25 Mont. 202, 64 Pac. 352; *Montana Ore Pur. Co.* v. *Lindsay,* 25 Mont. 24, 63 Pac. 715; *State ex rel. Independent Pub. Co.* v. *Smith,* 23 Mont. 329, 58 Pac. 867.)

In *State ex rel. Reed* v. *Scott, supra,* it was said: "The board of educational lands and funds is a trustee for the sale and leasing of the land set apart for the support of educational institutions, and, to justify the interference of a court, there must be an abuse of the trust.   *   *   *   It is the duty of the board to sell or lease the educational lands of the state for the highest price possible to be obtained, and increase and protect by all honorable means the funds for the support of the educational institutions; and, so long as the board is faithfully performing its duty in that regard, this court will refuse to interfere." If this be sound, as we think it is, then in the course complained of the board was actuated by the very considerations which are supposed to govern it.   It therefore cannot be said that there was a manifest abuse of its discretion, but the case is resolved into the mere inquiry whether these considerations were entertained upon an erroneous or insufficient basis.   *Mandamus* cannot be invoked to aid such an inquiry.   (*State ex rel. Independent Pub. Co.* v. *Smith, supra; Ex parte Newman,* 14 Wall. (U. S.) 152, 20 L. Ed. 877; *Douglass* v. *Commonwealth,* 108 Pa. 559; *Hoole* v. *Kinkead,* 16 Nev. 217.)

Nor from the bidder's point of view can any just complaint be [3]   made of this conclusion.   Bidders at sales of school lands are bound to know that no sale by the register is complete without the approval and confirmation of the board, and that the board in confirming or rejecting a sale by the register will be governed by the interests of the trust which it is charged to administer.   The situation of the parties to a sale by the register is thus quite analogous to that of parties to a sale by a receiver, concerning which this court said: "The purchaser at such sale takes the property with notice that the court has power, in its discretion, to set it aside; that, while mere inadequacy of consideration is not ordinarily in itself sufficient to warrant the

court in setting aside a sale to a *bona fide* purchaser, if it shall appear that for some reason, disclosed or undisclosed, the property has been greatly undersold, and the purchaser has, even in good faith, obtained an undue advantage of the persons for whose benefit the sale was made, the court may, in its discretion, set it aside." (*Gazette Printing Co.* v. *McConnell*, 45 Mont. 89, Ann. Cas. 1913C, 1327, 122 Pac. 561.)

It follows that the proceeding must be dismissed, and it is so ordered.

*Dismissed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.