STATE ex rel. ROBBINS, Respondent, *v.* BONNER, et al., Appellants.

No. 9243.

Submitted March 18, 1954. Decided May 12, 1954.

270 Pac. (2d) 400.

Mr. Arnold H. Olsen, Atty. Gen., Mrs. Vera Jean Heckathorn, Asst. Atty. Gen., for appellants.

Mr. Seth F. Bohart, Mr. James H. Morrow, Jr., Bozeman, for respondent.

Mrs. Heckathorn, Mr. Bohart and Mr. Morrow argued orally.

MR. JUSTICE ANGSTMAN:

This is a proceeding in mandamus to compel the defendants to execute to petitioner a certificate of sale to certain real estate in Park County.

The facts giving rise to the controversy are these: Defendant W. P. Pilgeram, as commissioner of state lands and investments, offered for sale at public auction all of section 36, township 3 south, range 7 east, M. P. M., in Park County. Notice of sale was published once a week for four consecutive weeks stating that the sale would be held on Thursday, February 15, 1951;

Warren DePuy had requested the state board of land commissioners to offer the land for sale; in accordance with the practice long pursued, Mr. Pilgeram sent typewritten copy of the notice of sale to those who appeared from the records of the land department to have an interest in the land to be sold; such copy was sent to DePuy, but through error in preparing the typewritten copies of the notices the date was shown to be "Friday, February 15" instead of "Thursday, February 15"; the error had been corrected before the notice had been sent out by crossing out the word "Friday" and the number "15" and in their places were written in ink the word "Thursday" and the number "15"; but on the copy sent to DePuy the figures were written "16," so that the notice sent to him fixed the date of sale on "Thursday, February 16"; the sale was held on February 15, at which time petitioner bid $5 per acre and the land was struck off to him; he paid Mr. Pilgeram the amount of $600 which was more than ten percent of the purchase price; on February 18 Pilgeram notified petitioner by letter that the person who had requested the sale had not been present because of an error in the typewritten notice sent to him and that the land would be readvertised for sale to be held on March 13th; on March 12th petitioner made demand for a certificate of sale; the demand being refused this action followed. Other facts will be alluded to in a discussion of the legal questions presented.

After hearing, the court found in favor of petitioner and entered judgment accordingly. From the judgment defendants appealed.

Petitioner has filed a motion to strike the bill of exceptions from the transcript contending that it was not served and filed in time. Judgment was filed on May 22, 1952, and notice of entry of judgment was sent by the clerk of the court to respective counsel on the same day. On June 6th the court by order granted 60 days "in addition to the time allowed by law" within which to prepare, serve and file the bill. On August 4th, upon application supported by affidavits showing the necessity therefor, the

court extended the time for the bill of exceptions until September 1st. The bill was presented on August 25th.

Petitioner contends that there has been a violation of R. C. M. 1947, sec. 93-8708, in that the extensions exceed 90 days and were granted "without the consent of the adverse party." Section 93-8708 contains the limitation, "but such extension shall not exceed ninety days without the consent of the adverse party."

Here defendants had until June 6th to prepare, serve and file the bill of exceptions without procuring any extension of time. R. C. M. 1947, sec. 93-5505. The two extensions granted by the court are less than 90 days in all unless there be counted the 15 days allowed by law. But these should obviously not be counted because those 15 days are allowed by law and are no part of the extensions granted by the court. While unnecessary to a decision of this case, we doubt whether the limitation in section 93-8708 has any application to the time for preparing, serving and filing a bill of exceptions.

There was a general revision of the civil and criminal practice acts by Chapter 225, Laws of 1921. That chapter amended what is now R. C. M. 1947, sec. 93-5505 and repealed everything in conflict with it. It specifically dealt with the time when bills of exception should be prepared, served and filed and provided for the granting of extensions of time therefor and placed certain limitations upon the power of the court in so doing. That statute is later in point of time than R. C. M. 1947, sec. 93-8708. It is doubtful, to say the least, whether the legislature intended, when it amended section 93-5505 to still have section 93-8708 operate as a further limitation upon the court in granting extensions of time for a bill of exceptions. But as above noted, it is unnecessary in this case to pass upon the point. The bill of exceptions is properly in the record and the motion to strike it therefrom is denied.

While several specifications of error are made in appellants' brief, the determinative question is whether the evidence justifies the findings and judgment of the court.

Under R. C. M. 1947, sec. 81-918, it is provided that: "All

sales of state lands * * * shall be subject to the approval and confirmation by the state board of land commissioners, and no sale shall be deemed completed until after such approval and confirmation. The board shall have the power and it shall be its duty to disapprove any sale which in its opinion would be disadvantageous to the state.''

The duty of the commissioner to execute and deliver a certificate of purchase does not arise until the sale is approved. R. C. M. 1947, sec. 81-921. Here the notice of sale recited that ''all sales are made subject to the approval and confirmation of the state board of land commissioners, and no sale shall be deemed completed until after such approval.'' On the day of the sale a public announcement was made that the sale would be subject to approval by the state land board.

The receipt issued for the down payment again pointed out the contingent character of the sale and that the money would be refunded if the board rejected the sale. On April 11, 1951, which was nearly a month after this proceeding was commenced, the board rejected the sale. The resolution of the board recited, among other things, that the notice given to the person who applied to have the land sold stated that the sale would be held on February 16th; that because of this error the applicant did not appear and bid at the sale; that the applicant would bid a greater amount than had been bid if the land were again offered for sale and that the board believed the price bid by petitioner is inadequate and less than the real value of the land and that it is to the best interest of the state that the sale be disapproved.

That petitioner under the facts is not entitled to a writ of mandamus to compel the issuance of a certificate of purchase has been held in the case of State ex rel. Gravely v. Stewart, 48 Mont. 347, 137 Pac. 854, 855. This court in that case pointed out that the state holds the grants of lands for school purposes as a trust and that the duty of the state board of land commissioners is to administer the trust so as to ''secure the largest measure of legitimate advantage to the beneficiary of it''; that the board in determining whether it shall approve or reject a

sale acts quasi-judicially and unless there has been a manifest abuse of discretion the courts will not interfere with the board's discretion.

Petitioner's counsel contend that the Gravely case was decided under a different statute. They point out that section 2153 of the 1907 Codes, in effect when the Gravely case was decided, provided in part that it was the duty of the board to dispose of the lands, ''in such manner as may secure the maximum possible amount provided therefor'', whereas the present statute, R. C. M. 1947, sec. 81-103, provides that it is the board's duty ''so to administer this trust as to secure the largest measure of legitimate and reasonable advantage to the state.'' It was not this provision of the statute that controlled the Gravely case. It was decided on the discretionary power of the board to either confirm or reject the sale. Those statutory provisions still exist.

They also point out that in the Gravely case there was an offer to pay $3 per acre more than had been bid on the property. Here Mr. Pilgeram testified: ''The reason that I could not comply with those demands was because Mr. DePuy had come in and offered to pay more money if he would have been present at the sale.''

The Constitution, Article XVII, sec. 1, provides that ''none of such land * * * shall ever be disposed of * * * unless the full market value of the estate or interest disposed of * * * be paid or safely secured to the state''.

It is competitive bidding that produces the fair market value of the property disposed of. State ex rel. Dickgraber v. Sheridan, 126 Mont., 487, 254 Pac. (2d) 390. Competitive bidding was stifled here because of the mistake in the notice given to the person interested in having the land put up for sale. Just how much more he would have bid had he been present is immaterial. It is sufficient to support the action of the board that it would have been more than was actually bid.

It is contended also that in this case Mr. DePuy did not himself make an offer to pay more than the bid made by petitioner. Perhaps his reason for not so testifying was that a demurrer

was sustained to the affirmative defense containing these allegations. His counsel stated to the board that "Mr. DePuy will guarantee and makes a guarantee to the Board now, that he will pay at least $2.50 more on the $15 an acre, making it $17.50 an acre and on the $5.00 bid he will bid at least $1.00 more an acre, a total net advantage to the state if another sale is held, of $2400.00."

As before stated, the board was warranted in rejecting the ██ sale and in causing the property to again be advertised for public auction on the showing made which tended to show that competitive bidding was stifled and as a result thereof, the full market value of the land had not been obtained.

The claim that this case differs from the Gravely case because here there was evidence of arbitrary and capricious acts cannot be sustained. Mr. Pilgeram, who was conversant with the facts, had not only the right, but it was his duty, to oppose confirmation of the sale by the board to the end that the error or mistake might be corrected and open bidding obtained at a time and place to which all interested parties should receive notice.

Petitioner contends that since the board did not hold a meeting and take any action to reject the sale until after this proceeding was commenced and until after re-advertising the property for sale, its action at that late day was ineffectual. The difficulty here is that it required affirmative action by the board before there could be a sale of the property. In other words, without confirmation or approval by the board there was no sale.

The contention is made that the action of the board is shown ██ to be arbitrary and capricious because of the fact that there were three tracts of land in exactly the same situation so far as the error in the notice was concerned and that as to one of the tracts the board approved the sale, whereas it rejected the other two. The difference between the two tracts rejected and the one approved is that the defective notice did not affect the latter because Mr. DePuy did not complain of it or assert that he would have bid a higher sum for it than it brought at the sale.

It is also contended that because of R. C. M. 1947, sec. 81-908,

which prohibits any person from purchasing more than one section of state land, DePuy could not have become the purchaser of more than one section of land and that he could not qualify as a bidder for more than that acreage. It was explained to the board that DePuy has a son and a daughter, both of whom are above the age of 21 years, who could qualify as purchasers in their own right.

We have given consideration to other questions urged by respondent but we find nothing in the record justifying the judgment of the trial court.

The judgment is reversed and the cause remanded with directions to dismiss the proceeding.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES BOTTOMLY, FREEBOURN and ANDERSON, concur.