No. 98-535

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 263

296 Mont. 402

989 P.2d 800

MONTANANS FOR THE RESPONSIBLE USE OF THE SCHOOL TRUST,

Plaintiff, Respondent, and Cross-Appellant,

v.

STATE OF MONTANA, ex rel. BOARD OF LAND COMMISSIONERS

and DEPARTMENT OF NATURAL RESOURCES AND CONSERVATION,

Defendants, Appellants, and Cross-Respondents.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Tommy H. Butler (argued), Special Assistant Attorney General, Montana Department of Natural Resources & Conservation, Helena, Montana

For Respondent:

Roy H. Andes (argued), Attorney at Law, Missoula, Montana

For Amicus:

David J. Dietrich (argued); Dietrich Law Offices, Billings, Montana

(for Montana Leaseholders Association)

Mark L. Stermitz, Montana Appleseed Center for Law & Justice, Missoula,

Montana

Argued: May 18, 1999

Submitted: May 27, 1999

Decided: November 2, 1999

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

**¶1 The State of Montana (hereafter, the State), appeals from the judgment and order of the First Judicial District Court, Lewis and Clark County. Respondent Montanans for the Responsible Use of the School Trust (hereafter, Montrust) cross-appeal the judgment of the District Court.**

**¶2 We affirm in part and reverse in part.**

**¶3 The parties raise the following issues:**

**¶4 1. Whether the District Court erred in concluding that § 77-1-130, MCA, is**

unconstitutional.

¶5 2. Whether the District Court erred in concluding that the Department's rental policy for cabin site licenses and leases under § 77-1-208, MCA, is unconstitutional.

¶6 3. Whether the District Court correctly determined that § 77-1-208, MCA, does not violate the trust.

¶7 4. Whether the District Court erred in concluding that § 77-5-211, MCA, violates the State's fiduciary duties regarding school trust lands.

¶8 5. Whether the District Court erred in concluding that § 77-6-304, MCA, is constitutional.

¶9 6. Whether the District Court erred in concluding that § 77-6-305, MCA, is constitutional.

¶10 7. Whether the District Court abused its discretion in denying Montrust reasonable attorney fees.

## Standard of Review

¶11 We review a district court's conclusions of law to determine whether they are correct. Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603. Statutes are presumed to be constitutional and it is the duty of the Court to avoid an unconstitutional interpretation if possible. State v. Nye (1997), 283 Mont. 505, 510, 943 P.2d 96, 99 (citations omitted). A party challenging the constitutionality of a statute "bears the burden of proving the statute unconstitutional. Any doubt is to be resolved in favor of the statute." State v. Martel (1995), 273 Mont. 143, 148, 902 P.2d 14, 17 (citations omitted). A statute will be "upheld on review except when proven to be unconstitutional beyond a reasonable doubt." Davis v. Union Pacific R. Co. (1997), 282 Mont. 233, 239, 937 P.2d 27, 30.

## Factual and Procedural Background

¶12 In February, 1997 Montrust filed a complaint challenging the constitutionality of fourteen statutes that concern Montana's school trust lands and seeking declaratory and injunctive relief. In May, 1997 Montrust filed an amended complaint. Following

a hearing in May, 1997 the District Court issued a preliminary injunction prohibiting the State from issuing deeds for historic rights of way on school trust lands under House Bill 607 (codified as § 77-1-130, MCA) and from leasing or disposing of school trust lands under § 20-6-621, MCA. A hearing was held in October, 1997, and the District Court issued its Decision, Order and Permanent Injunction in April, 1998. Concluding that ten of the statutes challenged by Montrust violated Montana's Enabling Act and Constitution and that another statute was invalid as applied, the District Court permanently enjoined eleven statutes. In June, 1998 the District Court awarded Montrust costs of $312 but denied Montrust attorney fees. The State appeals the District Court's permanent injunction of three statutes. Montrust cross-appeals the District Court's ruling on three other statutes and the District Court's denial of attorney fees.

## Discussion

¶13 Under the Act of February 22, 1889 (hereafter, the Enabling Act), ch. 180, 25 Stat. 676 (1889), the federal government granted Montana the sixteenth and thirty-sixth sections of each township in Montana "for the support of common schools." Section 10 of the Enabling Act. The federal government's grant of those lands to Montana constitutes a trust (hereafter, the trust). *See* Rider v. Cooney (1933), 94 Mont. 295, 306-07, 23 P.2d 261, 263 (citations omitted). The terms of the trust are set forth in Montana's Constitution and the Enabling Act. *See* Art. XVII, Sec. 1, Mont. Const. (1889) (providing federal grant of lands "shall be held in trust for the people, to be disposed of as hereafter provided, *for the respective purposes for which they have been or may be granted*") (emphasis added); Department of State Lands v. Pettibone (1985), 216 Mont. 361, 366, 702 P.2d 948, 951 (concluding Montana's 1889 Constitution accepted the lands and "provided they would be held in trust consonant with the terms of the Enabling Act . . . . The 1972 Montana Constitution continued those terms") (citations omitted).

¶14 The State of Montana is a trustee of those lands (hereafter, the school trust lands). *See, e.g.,* Toomey v. State Board of Land Com'rs (1938), 106 Mont. 547, 559, 81 P.2d 407, 414; State v. Stewart (1913), 48 Mont. 347, 349, 137 P. 854, 855. Further, "The state board of land commissioners, as the instrumentality created to administer that trust, is bound, upon principles that are elementary, to so administer it as to secure the largest measure of legitimate advantage to the beneficiary of it." *Stewart*, 48 Mont. at 349-50, 137 P. at 855. The State Board of Land Commissioners

(hereafter, the Board) "owe[s] a higher duty to the public than does an ordinary businessman." State v. Babcock (1966), 147 Mont. 46, 54, 409 P.2d 808, 812. Finally, Montana's Constitutional provisions are "limitations on the power of disposal by the legislature." *Rider*, 94 Mont. at 307, 23 P.2d at 263. One limitation on the legislature's power of disposal is the trust's requirement that full market value be obtained for trust lands. *See* Section 11 of the Enabling Act (as amended by the Act of May 7, 1932, ch. 172, 47 Stat. 150 (1932)) (providing that "none of such lands . . . shall ever be disposed of . . . unless the full market value of the estate or interest disposed of, to be ascertained in such manner as may be provided by law, has been paid or safely secured to the State").

¶15 With the foregoing as background, we note the pertinent provisions of the Enabling Act and Montana's Constitution. The Enabling Act provides in part:

> That all lands granted by this Act shall be disposed of only at public sale after advertising--tillable lands capable of producing agricultural crops for not less than $10 per acre and lands principally valuable for grazing purposes for not less than $5 per acre. . . .
>
> The said lands may be leased under such regulations as the legislature may prescribe.
>
> The State may also, upon such terms as it may prescribe, grant such easements or rights in any of the lands granted by this Act, as may be acquired in privately owned lands through proceedings in eminent domain: *Provided, however*, That none of such lands, nor any estate or interest therein, shall ever be disposed of except in pursuance of general laws providing for such disposition, nor unless the full market value of the estate or interest disposed of, to be ascertained in such manner as may be provided by law, has been paid or safely secured to the State.

Section 11 of the Enabling Act (as amended by the acts of May 7, 1932, ch. 172, 47 Stat. 150 (1932) and October 16, 1970, Pub. L. No. 463, 84 Stat. 987 (1970)).

¶16 Article X, Section 4 of Montana's Constitution provides:

> **Board of land commissioners.** The governor, superintendent of public

instruction, auditor, secretary of state, and attorney general constitute the board of land commissioners. It has the authority to direct, control, lease, exchange, and sell school lands and lands which have been or may be granted for the support and benefit of the various state educational institutions, under such regulations and restrictions as may be provided by law.

Art. X, Sec. 4, Mont. Const.

**¶17 Article X, Section 11 further provides:**

**Public land trust, disposition**. (1) All lands of the state that have been or may be granted by congress, or acquired by gift or grant or devise from any person or corporation, shall be public lands of the state. They shall be held in trust for the people, to be disposed of as hereafter provided, for the respective purposes for which they have been or may be granted, donated or devised.

(2) No such land or any estate or interest therein shall ever be disposed of except in pursuance of general laws providing for such disposition, or until the full market value of the estate or interest disposed of, to be ascertained in such manner as may be provided by law, has been paid or safely secured to the state.

(3) No land which the state holds by grant from the United States which prescribes the manner of disposal and minimum price shall be disposed of except in the manner and for at least the price prescribed without the consent of the United States.

Art. X, Sec. 11, Mont. Const.

## Discussion

**¶18 As a preliminary matter, we note that the parties disagree over the standard of review in the present case. The State urges that this Court should determine whether the legislation in question "irrevocably" conflicts with the Board's fiduciary duties as a trustee "in any conceivable instance" and whether the Board may constitutionally apply the legislation. Montrust argues rather that there are two essential inquiries: whether the legislation comports with the Montana Constitution, and whether the**

legislation is preempted by the Enabling Act. Montrust also argues that this Court should employ an equal protection analysis. We conclude that neither party offers persuasive authority for its proposed standard of review.

¶19 We therefore decline to adopt either party's proposed standard of review. As previously discussed, the school lands are held in trust. Moreover, "[t]he essence of a finding that property is held in trust, school, public, or otherwise, is that anyone who acquires interests in such property do so 'subject to the trust.' " *Pettibone*, 216 Mont. at 375, 702 P.2d at 956-57 (citations omitted). We follow our previously discussed standard of review in determining whether the statutes are consistent with the constitutional mandates of the trust and the State's fiduciary duties as a trustee.

¶20 1. Whether the District Court erred in concluding that § 77-1-130, MCA, is unconstitutional.

¶21 Section 77-1-130, MCA, authorizes individuals and counties to apply to the Department of Natural Resources and Conservation (hereafter, the Department) for historic right-of-way deeds to provide access to private property or to continue county roads. The statute provides in pertinent part:

> At the time of issuing the historic right-of-way deed, the department shall collect from the applicant the full market value of the acreage of the historic right-of-way based on the following classifications of land:
>
> (i) $37.50 per acre for state land classified as grazing land;
>
> (ii) $275 per acre for state land classified as timber land;
>
> (iii) $100 per acre for state land classified as crop land; and
>
> (iv) $100 per acre for other land.

Section 77-1-130(4)(a), MCA. The District Court found and the State does not dispute that § 77-1-130, MCA's figures "are based on the median values for the classifications of land in 1972."

¶22 The State argues that the District Court erred in striking § 77-1-130, MCA, because it is facially valid and Montrust has not shown that it has constitutional

**infirmities beyond a reasonable doubt. The State relies on an Attorney General opinion, 40 A.G. 24 (1983), in arguing that the figures in § 77-1-130, MCA, are merely a minimum above which the Department may charge full market value. The State contends that the Board has discretion not to implement the values set forth in § 77-1-130, MCA, and that this Court should assume that the Board will uphold its constitutional duty to charge full market value for historic right-of-way deeds. Montrust responds that by fixing fair market values at 1972 levels, § 77-1-130, MCA, is unconstitutional because it expressly violates the trust's requirement that full market value be obtained for school trust lands.**

**¶23 We conclude that the plain language of § 77-1-130, MCA, requires that full market valuations of right-of-way acreage be based on 1972 levels. Section 77-1-130, MCA, provides in part that "the department *shall* collect from the applicant the full market value of the acreage of the historic right-of-way *based* on the following classifications of land . . . ." Section 77-1-130(4)(a), MCA (emphasis added). The statute's use of the word "shall" admits of no discretion and requires the department to use 1972 values. We hold that this statute clearly violates the State's constitutional obligation to obtain full market value for school trust lands.**

**¶24 2. Whether the District Court erred in concluding that the Department's rental policy for cabin site licenses and leases under § 77-1-208, MCA, is unconstitutional.**

**¶25 Section 77-1-208, MCA, provides in pertinent part:**

> **Cabin site licenses and leases--method of establishing value**. (1) The board shall set the annual fee based on full market value for each cabin site and for each licensee or lessee who at any time wishes to continue or assign the license or lease. The fee must attain full market value based on appraisal of the cabin site value as determined by the department of revenue. The licensee or lessee has the option to pay the entire fee on March 1 or to divide the fee into two equal payments due March 1 and September 1. The value may be increased or decreased as a result of the statewide periodic revaluation of property pursuant to 15-7-111 without any adjustments as a result of phasing in values. . . .

> (2) The board shall set the fee of each initial cabin site license or lease or each current cabin site license or lease of a person who does not choose to retain

the license or lease. The initial fee must be based upon a system of competitive bidding. The fee for a person who wishes to retain that license or lease must be determined under the method provided for in subsection (1).

Section 77-1-208, MCA.

**¶26 The District Court ruled that § 77-1-208, MCA, did not violate the trust because it requires that full market value be obtained. However, the District Court found that the Department had a policy of charging a rental rate of 3.5% of appraised value (hereafter, the rental policy) and that Montrust had introduced an economic analysis of cabin site rentals showing that the rental policy's 3.5% rate was "significantly below a fair market rental rate." The District Court concluded that the rental policy violated the trust's constitutional requirement that full market value be obtained for school trust lands.**

**¶27 The State argues that Montrust challenged the constitutionality of § 77-1-208, MCA's ban on competitive bidding for renewals of cabin site leases but did not challenge the constitutionality of the rental policy. The State argues that it therefore did not have notice of Montrust's objection to the rental policy and that it did not consent impliedly to trying that issue. The State argues that the District Court should not have addressed the rental policy after it affirmed the constitutionality of § 77-1-208, MCA.**

**¶28 Montrust responds that its pleadings gave notice of the issue whether the Department's rental policy achieved full market rates. Montrust argues further that substantial evidence supported the conclusion that the rental policy did not obtain full market value for cabin site leases.**

**¶29 We have previously addressed whether pleadings give sufficient notice of an issue. In Miller v. Titeca (1981), 192 Mont. 357, 628 P.2d 670, this Court concluded that the district court's resolution of damages "did not conform precisely with the buyer's complaint." *Titeca*, 192 Mont. at 364, 628 P.2d at 675. However, the Court in *Titeca* noted that under Rule 8, M.R.Civ.P., "all pleadings shall be construed as to do substantial justice," and concluded that**

> The courts should "look to the claim as a whole, to the subject with which it deals, to the reason and spirit of the allegations in ascertaining its real

purpose. If such purpose can reasonably be said to be within the scope of the language used, that purpose should be honored."

*Titeca*, 192 Mont. at 364, 628 P.2d at 675 (citation omitted). Thus, in assessing whether Montrust's pleadings gave notice of the issue whether the rental policy was constitutional, we look at Montrust's claim as a whole and to "the reason and spirit of the allegations in ascertaining its real purpose." *Titeca*, 192 Mont. at 364, 628 P.2d at 675 (citation omitted). ¶ In Montrust's complaint and amended complaint, Montrust asserted that

> § 77-1-208, MCA[,] provides for competitive bidding for the first issuance of cabin site leases, but prohibits it for renewals. By tying lease rental rates to the taxation valuation procedure, the legislature has intentionally discounted the value of those leases below full market rates. Doing so violates the duties of prudence, loyalty, fidelity, productivity, accountability.

¶30 We conclude that this pleading gave notice of the issue whether cabin sites were leased at full market rental rates. Although Montrust's complaint focussed on the actions of the legislature instead of the Department, the complaint clearly signaled its concern with the intentional discounting of leases below full market rates. We hold that the State had adequate notice of Montrust's objection to the rental policy.

¶31 Moreover, we conclude that the rental policy violates the trust. We have previously concluded that the Board and the Department have discretion in administering the trust; however, their discretion is not unbounded. In State v. Babcock (1966), 147 Mont. 46, 409 P.2d 808, we concluded that

> There is no doubt that the State Board of Land Commissioners has considerable discretionary power when dealing with the disposition of an interest in land they hold in trust for the people of this state. . . .

. . . .

> The discretionary power of the Board is, however, limited. . . . Article XVII, § 1 of the Montana Constitution provides [one limitation]. A portion of such section reads: "* * * and none of such land, nor any estate or interest therein, shall ever be disposed of except in pursuance of general laws providing for

such disposition, *nor unless the full market value of the estate or interest disposed of,* to be ascertained in such manner as may be provided by law, be paid or safely secured to the state."

*Babcock*, 147 Mont. at 51-52, 409 P.2d at 811 (emphasis added). In the present case, the trust mandates that the State obtain full market value for cabin site rentals. Furthermore, the State does not dispute the District Court's determination that the rental policy results in below market rate rentals. We hold that the rental policy violates the trust's requirement that full market value be obtained for school trust lands and interests therein.

**¶32 3. Whether the District Court correctly determined that § 77-1-208, MCA, does not violate the trust.**

**¶33 The District Court concluded that § 77-1-208, MCA, on its face does not violate the trust because it requires that full market value be obtained for cabin site lease renewals. As previously noted, § 77-1-208, MCA, provides that the Board "shall set the fee of each initial cabin site license or lease or each current cabin site license or lease of a person who does not choose to retain the license or lease . . . based upon a system of competitive bidding." Section 77-1-208(2), MCA. However, for renewals of cabin site leases or licenses, § 77-1-208, MCA, provides that "[t]he fee must attain full market value based on the appraisal of the cabin site value as determined by the department of revenue." Section 77-1-208(1), MCA.**

**¶34 On cross-appeal, Montrust argues that § 77-1-208, MCA, is facially unconstitutional because its eschewal of competitive bidding is "calculated" to keep cabin site rental rates below their full market value. Montrust's argument assumes that without competitive bidding, the Department cannot obtain fair market value for its renewals of cabin site leases. Montrust also argues that § 77-1-208, MCA, breaches the State's fiduciary duty of undivided loyalty because of the preference rights that cabin site lessees have to renew and assign their leases under §§ 77-6-205 and -208(1), MCA. The State responds that because § 77-1-208, MCA, mandates that fair market value be obtained, it is consistent with the Enabling Act.**

**¶35 We conclude that § 77-1-208, MCA, on its face does not violate the trust. In Jerke v. State Dept. of Lands (1979), 182 Mont. 294, 296, 597 P.2d 49, 51 (citation omitted), the Court concluded that**

> The legislature is thus given authority to determine the method by which full market value is ascertained. The statutes dealing with the leasing of state land will pass constitutional muster as long as the concept of full market value is not abrogated.

*Jerke*, 182 Mont. at 296, 597 P.2d at 51 (citation omitted). *See also Toomey*, 106 Mont. at 561, 81 P.2d at 415 (concluding "when there is a sale of only an estate or interest in [school trust] lands, the Legislature is given ample power to determine the method by which to ascertain the full market value of the estate or interest"). Nothing in the plain language of § 77-1-208, MCA, abrogates the trust's mandate that full market value be obtained for school trust lands. Nor has Montrust shown that the renewal preference accorded cabin site lessees results in below market cabin site renewal rates. Thus, Montrust has failed to show that § 77-1-208, MCA, violates the duty of undivided loyalty. We hold that the District Court did not err in concluding that § 77-1-208, MCA, does not violate the trust.

**¶36 4. Whether the District Court erred in concluding that § 77-5-211, MCA, violates the State's fiduciary duties regarding school trust lands.**

**¶37 Section 77-5-211, MCA, provides:**

> **Free permit to remove timber**. Permits may be issued free of charge for dead, down, or inferior timber in such quantities and under such restrictions and regulations as the board may approve for fuel and domestic purposes to residents and settlers of the state.

**¶38 The District Court concluded that § 77-5-211, MCA, authorizes the Department to act in violation of the trust. The District Court reasoned that because the statute does not discriminate between timber with commercial value and timber that lacks commercial value, it allows the State to give away commercially valuable timber in violation of its trust duty of undivided loyalty.**

**¶39 The State argues that the District Court erred in concluding that § 77-5-211, MCA, is unconstitutional, because the Department has discretion whether to issue permits and Montrust has not shown that dead wood has commercial value in all**

instances. **Montrust responds that § 77-5-211, MCA, violates the State's fiduciary duty of undivided loyalty because it fails to distinguish between commercially valuable timber and timber that lacks commercial value.**

**¶40 In Wild West Motors, Inc. v. Lingle (1986), 224 Mont. 76, 728 P.2d 412, this Court considered a trustee's duty of undivided loyalty and concluded:**

> When a party undertakes the obligation of a trustee to receive money or property for transfer to another, he takes with it the duty of undivided loyalty to the beneficiary of the trust. The undivided loyalty of a trustee is jealously insisted on by the courts which require a standard with a "punctilio of an honor the most sensitive." A trustee must act with the utmost good faith towards the beneficiary, and may not act in his own interest, or in the interest of a third person.

*Wild West Motors*, 224 Mont. at 82, 728 P.2d at 415-16 (citations omitted).

**¶41 In failing to distinguish between commercially valuable timber and timber that lacks commercial value, § 77-5-211, MCA, authorizes the State to issue firewood permits to third parties without charging them for any commercially valuable wood that they collect. Thus, § 77-5-211, MCA, on its face violates both the trust's mandate that full market value be received for school trust lands and the State's trust duty of undivided loyalty. We hold that the District Court correctly concluded that § 77-5-211, MCA, is unconstitutional.**

**¶42 5. Whether the District Court erred in concluding that § 77-6-304, MCA, is constitutional.**

**¶43 Section 77-6-304, MCA, provides:**

> **Removal of improvements**. The former lessee may, however, remove the movable improvements on the land and dispose of them to parties other than the lessee. If he fails to remove the improvements from the land within 60 days from the date of the expiration of his lease, all of the improvements become the property of the state unless the department for good cause grants additional time for their removal.

¶44 On cross-appeal, Montrust contends that § 77-6-304, MCA's sixty-day provision violates the trust by providing direct unreimbursed benefits to nontrust entities. Montrust argues that there is no evidence that the Department has charged former lessees for exercising their sixty-day right under § 77-6-304, MCA. The State responds that § 77-6-304, MCA, does not violate any fiduciary duty, that it merely gives the Department time to inventory improvements on school trust lands, and that § 77-6-304, MCA, has no quantifiable impact on the trust fund. The State further argues that bids on school trust lands take into account the sixty-day provision.

¶45 The District Court found that § 77-6-304, MCA, did not prevent the Department from charging former lessees for the storage of improvements after the termination of their leases. The District Court also found that § 77-6-304, MCA, does not prevent a new lessee from moving onto trust land before the former lessee has removed his improvements. The District Court further found that "it was reasonably necessary for the Department to allow the former lessee some extra time to remove improvements, especially in the winter months when most agricultural leases terminate." The District Court acknowledged that the Department's policy is to postpone new leases pending removals of improvements by former lessees. Conceding that this policy could reduce potential profits to the trust, the District Court concluded nonetheless that the policy did not breach the State's fiduciary responsibilities and that § 77-6-304, MCA, is constitutional as applied to school trust lands.

¶46 We note that leases in school trust lands are subject to the trust. In Rider v. Cooney (1933), 94 Mont. 295, 23 P.2d 261, the Court determined that

> When a lease is granted upon the public lands of the state, an interest or estate in the lands has been alienated, and therefore the leasing of the lands of the state for a term of years is the disposal of an interest or estate in the lands within the provisions of our Constitution.

Rider, 94 Mont. at 308, 23 P.2d at 263.

¶47 In construing statutes, we have previously concluded that "[t]he intent of the Legislature is to be pursued and we determine that intent by interpreting the plain

meaning of the language used by the Legislature. The statutory language must be reasonably and logically interpreted and words given their usual and ordinary meaning." Matter of R.L.S., 1999 MT 34, ¶ 8, 293 Mont. 288, ¶ 8, 977 P.2d 967, ¶ 8.

¶48 Applying these canons of construction to § 77-6-304, MCA, we conclude that it plainly authorizes the Department to allow former lessees to remain free of charge on trust lands for up to sixty days while they remove movable improvements. The right to remove movable improvements that is provided under § 77-6-304, MCA, necessarily implies a right of occupancy in order to remove movable improvements. Further, as previously noted, the Department's practice is to postpone the issuance of new leases until movable improvements are removed. The Department's practice recognizes that to allow former lessees to remove improvements, including for example houses, cabins, and fences, after new leases have issued would interfere with new lessees' quiet enjoyment and possession of leased lands. We agree with this premise. As the District Court suggested, the Department could allow a new lessee to move onto trust lands before improvements are removed. The former lessee's occupancy during the period when he exercises his removal rights would however conflict with the new lessee's occupancy. Section 77-6-304, MCA, clearly contemplates that and authorizes the Department to avoid this conflict by postponing new leases without trust compensation while former lessees exercise their removal rights.

¶49 In Lassen v. Arizona Highway Dept. (1967), 385 U.S. 458, 87 S.Ct. 584, 17 L. Ed.2d 515, Arizona's Highway Department sought to prohibit Arizona's State Land Commissioner from applying rules regarding the acquisition of rights of way in lands held in trust by Arizona. The Commissioner's rules provided in part that "Rights of Way and Material Sites may be granted . . . for an indefinite period . . . *after full payment* of the appraised value has been made . . . ." *Lassen*, 385 U.S. at 459-60, 87 S. Ct. at 585, 17 L.Ed.2d at 517 (emphasis added). The Highway Department argued that no compensation "need ever be actually paid since it may be conclusively presumed that all highways enhance the value of the remaining trust lands in amounts at least equal to the value of the lands which were taken." *Lassen*, 385 U.S. at 465, 87 S.Ct. at 588, 17 L.Ed.2d at 521. The *Lassen* Court rejected this argument and concluded that "the purposes of Congress require that the Act's designated beneficiaries 'derive the full benefit' of the grant." *Lassen*, 385 U.S. at 468, 87 S.Ct. at 589, 17 L.Ed.2d at 522. The *Lassen* Court held that Arizona must compensate the trust with money for the "full appraised value of any material sites or rights of way

which it obtains on or over trust lands." *Lassen*, 385 U.S. at 469, 87 S.Ct. at 590, 17 L. Ed.2d at 523.

¶50 In the present case, we conclude that allowing former leaseholders up to sixty days to remove movable improvements without charge similarly denies the trust's beneficiaries "the full benefit" of the trust lands. *Lassen*, 385 U.S. at 468, 87 S.Ct. at 589, 17 L.Ed.2d at 522. Further, § 77-6-304, MCA, violates the duty of undivided loyalty by benefiting third parties to the detriment of the trust's beneficiaries. We hold that § 77-6-304, MCA, is unconstitutional on its face.

¶51 6. Whether the District Court erred in concluding that § 77-6-305, MCA, is constitutional.

¶52 Section 77-6-305, MCA, provides:

> **Settlement regarding improvements prerequisite to issuance of a new lease**. Before a lease is issued to the new lessee, the lessee shall show that the former lessee has been paid the value of the improvements pursuant to 77-6-302 or as determined under 77-6-306 or that the former lessee elects to remove the improvements.

Further, § 77-6-301, MCA, provides that "[a] lessee of state lands may place upon the lands a reasonable amount of improvements directly related to conservation of the land or necessary for proper utilization of it." Section 77-6-302, MCA, further provides that "[w]hen another person becomes the lessee of the lands, the person shall pay to the former lessee the reasonable value of these improvements at the time the new lessee takes possession. The reasonable value may not be less than the full market value of the improvements."

¶53 The District Court concluded that § 77-6-305, MCA, does not violate the trust "even though it may result in less revenue due to delayed leases." The District Court further concluded that the Department must have latitude to administer school trust lands.

¶54 On cross-appeal, Montrust argues that under § 77-6-305, MCA, a former lessee can delay indefinitely the issuance of a new lease on trust lands. Montrust notes that the parties stipulated that

> In denying the issuance of a lease to a new lessee, the school trust may receive revenue from the land where it issues a land use license to farm or graze the land. Otherwise, the land remains idle as far as generating any revenue to the trust. Improvement disputes may continue for many months and even years.

Montrust argues that § 77-6-305, MCA, violates the fiduciary duties of loyalty and accountability and that it conflicts with the *Lassen* Court's conclusion that gifts of trust land or interests therein cannot be made to third parties although the trust may benefit indirectly from such gifts.

¶55 The State responds that § 77-6-305, MCA, does not violate any fiduciary duty and that it has no demonstrable impact on trust revenues or the trust corpus. The State concedes that this statute is an occasional source of delay in the transfer of leases on trust lands. However, the State argues that allowing a new lessee to assume immediately a lease and to use the improvements installed by the former lessee can create "needless complications in determining the value of improvements."

¶56 The State correctly observes that both the Board and the Department have discretion in the management of trust lands. In *Stewart*, 48 Mont. at 350, 137 P. at 855, the Court observed that "of necessity, the board must have a large discretionary power over the subject of the trust . . . ."

¶57 However, this discretion is not unlimited but must conform to the requirements of the trust. *See, e.g., Toomey*, 106 Mont. at 559, 81 P.2d at 414 (concluding that "the state is a trustee in this instance, and that a trustee must strictly conform to the directions of the trust agreement . . . ."); *Babcock*, 147 Mont. at 51, 409 P.2d at 811 (recognizing discretionary powers of Board but concluding that "there can be no such implied powers inconsistent with any part of the constitution") (citation omitted). In allowing trust lands to idle indefinitely while former and new lessees determine the value of improvements, § 77-6-305, MCA, is inconsistent with the trust's mandate that full market value be obtained for school trust lands. We hold that the specific requirement in § 77-6-305, MCA, that a new lease will not issue until the new lessee shows that the old lessee has been paid the value of his improvements is unconstitutional on its face. We note that our holding does not reach the requirement, in § 77-6-305, MCA, that former lessees be reimbursed for their improvements.

¶58 7. **Whether the District Court abused its discretion in denying Montrust reasonable attorney fees.**

¶59 **The District Court denied Montrust's motion for reasonable attorney fees, concluding that the present action involved "neither frivolous conduct, extreme conduct, nor bad faith by the State." The District Court determined that § 25-10-711 (1), MCA, precluded the grant of attorney fees to Montrust.**

¶60 **Section 25-10-711, MCA, provides in pertinent part:**

> (1) In any civil action brought by or against the state, a political subdivision, or an agency of the state or a political subdivision, the opposing party, whether plaintiff or defendant, is entitled to the costs enumerated in 25-10-201 and reasonable attorney's fees as determined by the court if:
>
>> (a) he prevails against the state, political subdivision, or agency; and
>
> (b) the court finds that the claim or defense of the state, political subdivision, or agency that brought or defended the action was frivolous or pursued in bad faith.

Section 25-10-711, MCA.

¶61 **On cross-appeal, Montrust concedes that Montana has followed the American rule, which provides that "a party in a civil action is generally not entitled to [attorney] fees absent a specific contractual or statutory provision." Matter of Dearborn Drainage Area (1989), 240 Mont. 39, 42, 782 P.2d 898, 899. However, Montrust argues that Montana has recognized equitable exceptions to the rule. Montrust argues in part that it is entitled to reasonable attorney fees under the doctrine of private attorney general. Because this issue is dispositive, we do not address the other grounds for attorney fees that Montrust has raised.**

¶62 **The State responds that the American rule bars attorney fees in the present case. The State asserts that no contractual or statutory provision allows attorney fees. Further, the State argues that § 25-10-711, MCA, does not help Montrust because the State has not acted frivolously or in bad faith. The State also argues that even**

assuming *arguendo* that the doctrine of private attorney general is available in the present case, Montrust is not entitled to attorney fees. Further, the State directs this Court's attention to Helena Elementary School Dist. v. State (1989), 236 Mont. 44, 769 P.2d 684, *opinion amended by* Helena Elementary School Dist. v. State (1990), 236 Mont. 44, 784 P.2d 412, where the Court denied a request for attorney fees under the common fund and substantial benefit doctrines. However, *Helena Elementary School Dist*. is readily distinguished from the present case as we do not consider the common fund and substantial benefit doctrines. We note that the State also appears to argue that under a private attorney general theory, Montrust would be required to show that the trust's beneficiaries have received a tangible monetary benefit from Montrust's litigation. The State offers no authority for this interpretation, and we decline to adopt such a narrow reading of "benefit."

¶63 We have previously recognized equitable exceptions to the American rule. *See, e. g.*, Foy v. Anderson (1978), 176 Mont. 507, 511, 580 P.2d 114, 117 (affirming award of attorney fees on equitable grounds despite absence of specific contractual or statutory grant); Holmstrom Land Co. v. Hunter (1979), 182 Mont. 43, 48-49, 595 P.2d 360, 363 (again affirming award of attorney fees on equitable grounds in absence of statutory or contractual grant); Goodover v. Lindey's, Inc. (1992), 255 Mont. 430, 447, 843 P.2d 765, 775 (recognizing limited equitable exception to general rule when party is "forced into a frivolous lawsuit"). In Means v. Montana Power Co. (1981), 191 Mont. 395, 625 P.2d 32, this Court adopted the common fund doctrine, concluding

> The "common fund" concept provides that when a party through active litigation creates, reserves or increases a fund, others sharing in the fund must bear a portion of the litigation costs including reasonable attorney fees. The doctrine is employed to spread the cost of litigation among all beneficiaries . . . .

*Means*, 191 Mont. at 403, 625 P.2d at 37. In *Matter of Dearborn Drainage Area*, this Court recognized but declined to apply the private attorney general doctrine, commenting that "[t]he Doctrine is normally utilized when the government, for some reason, fails to properly enforce interests which are significant to its citizens." *Matter of Dearborn Drainage Area*, 240 Mont. at 43, 782 P.2d at 900.

¶64 A number of jurisdictions have adopted the private attorney general doctrine.

*See, e.g.,* Miotke v. City of Spokane (Wash. 1984), 678 P.2d 803 (adopting private attorney general theory for attorney fees); Arnold v. Arizona Dept. of Health Services (Ariz. 1989), 775 P.2d 521 (also adopting private attorney general theory); Serrano v. Priest (Cal. 1977), 569 P.2d 1303.

¶65 In *Serrano*, the court affirmed the district court's award of reasonable attorney fees to plaintiffs' attorneys under a private attorney general theory. The *Serrano* court concluded that

> there are three basic factors to be considered in awarding fees on this theory. These are in general: (1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, (3) the number of people standing to benefit from the decision.

*Serrano*, 569 P.2d at 1314. The *Serrano* court recognized that under the first factor, courts could be "thrust into the role of making assessments of the relative strength or weakness of public policies furthered by their decisions and of determining at the same time which public policy should be encouraged by an award of fees, and which not--a role closely approaching that of the legislative function." *Serrano*, 569 P.2d at 1314. However, the *Serrano* court concluded that the public policy furthered by the litigation in that case was "grounded in the State Constitution." *Serrano*, 569 P.2d at 1315. The *Serrano* court also noted that the uncontested findings of the district court established that the "benefits flowing from this adjudication are to be widely enjoyed among the citizens of this state," and concluded that under those circumstances, the award of attorney fees to the plaintiffs "was proper under the theory posited by the trial court." *Serrano*, 569 P.2d at 1315.

¶66 We adopt the private attorney general theory and the three part inquiry set forth in *Serrano*. Further, we conclude that Montrust is deserving of attorney fees under the private attorney general theory. First, Montrust has litigated important public policies that are grounded in Montana's Constitution. Second, the State argues that it had a duty to defend the statutes in the present case; thus, the State does not dispute the necessity of private enforcement of Montana's Constitution. Nor does the State dispute the magnitude of Montrust's consequent burden. Third, Montrust's litigation has clearly benefited a large class: all Montana citizens interested in Montana's public schools.

¶67 The award of attorney fees "to make the injured party whole" is within the discretion of a district court. Russell Realty Co. v. Kenneally (1980), 185 Mont. 496, 505, 605 P.2d 1107, 1112 (citation omitted). We have concluded that

> In determining whether the trial court abused its discretion, the question is not whether the reviewing court agrees with the trial court, but, rather, did the trial court in the exercise of its discretion act arbitrarily without the employment of conscientious judgment or exceed the bounds of reason, in view of all the circumstances, ignoring recognized principles resulting in substantial injustice.

Porter v. Porter (1970), 155 Mont. 451, 457, 473 P.2d 538, 541.

¶68 We hold that the District Court abused its discretion in denying Montrust's request for reasonable attorney fees. As previously discussed, this Court has long recognized equitable exceptions to the American rule, including the doctrine of private attorney general. In the present case, Montrust has successfully litigated issues of importance to all Montanans and incurred significant legal costs. We conclude that the District Court ignored recognized principles in denying Montrust reasonable attorney fees, resulting in "substantial injustice." *Porter*, 155 Mont. at 457, 473 P.2d at 541.

¶69 Affirmed in part and reversed in part for further proceedings consistent with this opinion.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

/S/ JAMES C. NELSON

Justice Karla M. Gray, concurring in part and dissenting in part.

¶70 I concur in the Court's opinion on all issues except issue 5, which is whether the District Court erred in concluding that § 77-6-304, MCA, is constitutional. On that

issue, I dissent from the Court's holding that § 77-6-304, MCA, is unconstitutional on its face as violative of the trust.

¶71 Section 77-6-304, MCA, provides:

> The former lessee may, however, remove the movable improvements on the land and dispose of them to parties other than the lessee. If he fails to remove the improvements from the land within 60 days from the date of the expiration of his lease, all of the improvements become the property of the state unless the department for good cause grants additional time for their removal.

The Court determines that this statute authorizes the Department to allow former lessees to remain free of charge on trust lands for up to sixty days while they remove improvements and, as a result, that the statute is facially inconsistent with the trust's requirement that full market value be obtained for interests in school trust lands. I would agree with the Court's conclusion if § 77-6-304, MCA, on its face, actually allowed for the continued occupancy of the leased premises by a former lessee for sixty days. The statute does not do so, however. Indeed, nothing in the statutory language permits continued occupancy by the former lessee for sixty days or precludes the issuance of a lease to, and occupancy thereunder by, a new lessee. Nor are the Department's policies relating to § 77-6-304, MCA, relevant to the facial constitutionality of the statute.

¶72 In short, it is my view that Montrust has failed to establish that § 77-6-304, MCA, is facially unconstitutional beyond a reasonable doubt as required by *Martel*. Therefore, I dissent from the Court's holding on issue 5.

/S/ KARLA M. GRAY

Justice Jim Regnier joins in Justice Gray's foregoing concurring and dissenting opinion.

/S/ JIM REGNIER

Chief Justice J. A. Turnage joins in Justice Gray's concurring and dissenting opinion.

/S/ J. A. TURNAGE