JUSTICE NELSON
dissents.
¶43 It has been a tough year for the School Trust. First, we upheld a legislative scheme that robs the Trust of resources for future school children in the name of current tax relief (Montanans for the Responsible Use of the School Trust v. Darkenwald, 2005 MT 190, *201 ¶¶ 66-69,328 Mont. 105, ¶¶ 66-69,119 P.3d 27, ¶¶ 66-69 (Leaphart, J., dissenting) (.Montrust ID); throws general trust law and fiduciary principles out the window as far as the Trust is concerned; and approves a $94,000,000.00 short-fall in the Trust by 2031 (Montrust II, ¶¶ 70-98 (Nelson, J., dissenting)).
¶44 Now we are told by the majority at ¶ 10 of this Opinion that while the Board of Land Commissioners (the Board) does not have “unfettered discretion” in determining “fair market value,” we will not find an abuse of that discretion unless the Board’s action is, “in effect, fraudulent.” What a lofty standard to set for our elected trustees in their management of the lands committed under our Constitution and Enabling Act to the education of Montana’s children! And, what a contrast with the standard we articulated in State v. Babcock (1966), 147 Mont. 46, 54, 409 P.2d 808, 812 (the State Board of Land Commissioners “owe[s] a higher duty to the public than does an ordinary businessman”). Now the standard is: “Do what you want; just don’t do something that involves bad faith, dishonesty or moral turpitude.” See Blacks Law Dictionary 672 (7th ed. 1999). Now, absent being able to prove outright theft, graft or corruption, no future litigant such as Friends of the Wild Swan (FOWS) or Montrust will have a chance in litigation seeking to protect the Trust from mismanagement and waste by the Board.
¶45 Obviously, with the abuse of discretion bar set at ground level, pretty much anything the Board chooses to do under § 77-1-202, MCA, will be acceptable. I disagree that the bar is as low as the majority says it is. Moreover, I disagree that every decision the Board makes under such a ridiculously inadequate standard is entitled to “respectful consideration” or deference.
¶46 I agree with FOWS’s argument and analysis, the majority’s primer on statutory construction notwithstanding. Section 77-1-202(1), MCA, can and should be interpreted to require that each harvest must, as the statute plainly requires, “secure the largest measure of legitimate and reasonable advantage to the state and provide for the long-term financial support of education.” The majority takes comfort in the fact that the statute “does not require accountings.” Likewise, it is also true that neither does the statute authorize the Board to pursue a “methodology” of “program-wide accounting on a yearly basis”-i.e., accepting losses on some harvests under the premise that at the end of the year there should, theoretically, be more profitable harvests than losers.
¶47 Even common sense dictates that one cannot secure the largest *202 measure of return if that measure-profitability-is reduced by unprofitable harvests. If I have three proposed harvests and will make a combined profitable return of $200,000.00 on two of the three, how exactly am I securing the largest measure of return, if I throw into that mix, the third sale on which I will lose $50,000.00? The real problem is that the Board will never know which individual harvests are winners or losers-i.e., it will never know whether it is securing the largest measure of return-because it does not account for the harvests individually. I am reminded of a pizza shop commercial a few years ago that had the proprietor saying that he loses money on each individual sale, but makes up for that in volume.
¶48 The majority’s attempt to “illuminate [] legislative intent” in the provisions of §§ 77-1-223[1] and 77-1-224, MCA, is also unavailing. These statutes-the Legislature’s “affirmative efforts,” as the majority puts it-are nonspecific as to accounting methods. None require any particular accounting practice, and none prohibit an accounting method which would apprise the Board as to whether it is receiving the “largest measure of legitimate and reasonable advantage to the state” on each harvest.
¶49 The majority’s reliance on these general statutes ignores the Board’s fiduciary responsibility with respect to state trust lands. What we stated in Montanans for the Responsible Use of the School Trust v. Board of Land Commissioners, 1999 MT 263, ¶ 14, 296 Mont. 402, ¶ 14, 989 P.2d 800, ¶ 14 (.Montrust I), bears repeating here:
The State of Montana is a trustee of those lands (hereafter, the school trust lands). See, e.g., Toomey v. State Board of Land Com’rs (1938), 106 Mont. 547, 559, 81 P.2d 407, 414; State v. Stewart (1913), 48 Mont. 347, 349, 137 P. 854, 855. Further, “The state board of land commissioners, as the instrumentality created to administer that trust, is bound, upon principles that are elementary, to so administer it as to secure the largest measure of legitimate advantage to the beneficiary of it.” Stewart, 48 Mont. at 349-50,137 P. at 855. The State Board of Land Commissioners (hereafter, the Board) “owe[s] a higher duty to the public than does an ordinary businessman.” State v. Babcock (1966), 147 Mont. 46, 54, 409 P.2d 808, 812.
Whether the Board’s fiduciary obligations-its higher duty to the *203 public-are reflected in unrelated, general accounting statutes does not alter its fiduciary obligation to secure the largest measure of legitimate and reasonable advantage to the state trust assets. Section 77-1-202, MCA, imposes on the Board duties that would be imposed on any fiduciary. Accounting for costs to ensure each disposition of the timber assets of the trust to ensure that the largest advantage is achieved is part of that duty.
¶50 Furthermore, the majority’s rationale-primarily focusing on legislative accounting requirements (or more properly, the lack thereof)-is not bolstered by its discussion of the Board’s duties as regards forest management practices and non-economic considerations. Despite what this Court did to minimize the Board’s fiduciary obligations in Montrust II, those trustee obligations, created under the Enabling Act and codified at § 77-1-202, MCA, require that the Board ensure the largest measure of legitimate and reasonable advantage to the state in the disposition of trust assets. The salient question is whether or not, at the moment of disposition, the Board can definitively state that an individual timber sale creates the statutorily required “largest measure” of advantage to the state and trust beneficiaries. Without knowing the costs of the individual sale, the Board cannot answer that question; it cannot accurately evaluate the sale’s economic impact; and, therefore, it cannot comply with the clear directive of § 77-1-202, MCA.
¶51 Additionally, the majority never explains how exactly forest management practices and non-economic considerations would be harmed by the Board accounting for individual harvests. If anything, those practices and considerations would be enhanced because of the Board’s more detailed knowledge of the legitimate and reasonable advantages of each sale along with the associated costs. Justice Leaphart’s dissent drives this point home.
¶52 Here, FOWS challenged the Goat Squeezer sale, not the annual timber harvest program for all state trust lands. The undisputed fact is that the Board does not know the costs or benefits of this sale in order to make an informed decision as to whether the sale’s projected revenue warrants approval. Program-level accounting does not answer this question and, more importantly, does not obviate the Board’s fiduciary obligation to realize the largest measure of advantage in each individual disposition of trust assets.
¶53 In summary, the record reflects that the Goat Squeezer sale will incur an estimated $750,400.00 in “expenditures” for the chosen action, Alternative C. The record also reflects that stumpage values, an *204 important factor in determining any timber sale, continue to decline as does the rate of return on state forest lands. Here, the Board has failed to demonstrate that the subject timber sale has secured any advantage, much less the largest measure of legitimate and reasonable advantage which § 77-1-202, MCA, requires.
¶54 Interestingly, the United States Forest Service accounts for costs and revenues of each individual timber sale on federal holdings in Montana, so it cannot be that difficult an endeavor. Private businesses throughout this country utilize cost accounting as part of their cost-benefit analysis; yet, seemingly, the Board and the State of Montana lack this elemental accounting capability with respect to timber sales from School Trust lands.
¶55 The Board is not complying with § 77-1-202, MCA, if it cannot demonstrate that it has secured the largest legitimate and reasonable advantage to the State with regard to each sale of Trust assets. Not only has that unambiguous statutory mandate not been proven in this case; but, as a result of the Court’s decision here, the Board-exercising it’s nearly unlimited discretion-will not, as a practical matter, have to concern itself with this statutory requirement in the future. Under these circumstances, we can only hope, that what the State loses on individual sales, it will make up in volume.
¶56 I dissent.

 The record reflects that the “Asset Value Reports” for trust assets in which the majority seem to take comfort are based on program-level costs that are simply estimates.