DA 11-0081

FILED

November 27 2012

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 271

WESTERN TRADITION PARTNERSHIP, INC.,
a corporation registered in the State of Montana,
and CHAMPION PAINTING, INC., a Montana
corporation, MONTANA SHOOTING SPORTS
ASSOCIATION, INC., a Montana corporation,

        Plaintiffs, Appellees, and
        Cross-Appellants,

    v.

ATTORNEY GENERAL of the State of Montana,
and COMMISSIONER OF THE COMMISSION
FOR POLITICAL PRACTICES,

        Defendants, Appellants, and
        Cross-Appellees.

APPEAL FROM:    District Court of the First Judicial District,
                In and For the County of Lewis and Clark, Cause No. BDV 10-238
                Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Steve Bullock, Montana Attorney General; James P. Molloy, Assistant
                Attorney General; Helena, Montana; Anthony Johnstone; Missoula,
                Montana

        For Appellees:

                Margot B. Ogburn; Wittich Law Firm, P.C.; Bozeman, Montana

                      Submitted on Briefs:  August 1, 2012

                                  Decided:  November 27, 2012

Filed:

_____
                        Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1　This matter returns to the Court for determination of the Cross-Appellants' appeal from the District Court's rejection of their claim for attorneys' fees. In the previous appeal, we reversed the District Court's grant of summary judgment for the Cross-Appellants and held that their cross-appeal on the attorneys' fee issue was moot. *Western Tradition Partn., Inc. v. Atty. Gen.*, 2011 MT 328, ¶ 48, 363 Mont. 220, 271 P.3d 1. Our decision thereafter was reversed by the United States Supreme Court. *American Tradition Partn., Inc. v. Bullock*, 567 U.S. ___, 132 S. Ct. 2490 (2012) (per curiam). On motion of the Cross-Appellants, we agreed to consider the attorneys' fee issue based on the briefing previously submitted to this Court. We now affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2　The procedural history of this case is set forth in detail in the Court's previous opinion. *Western Tradition Partn.*, ¶¶ 2-33. Briefly stated, Plaintiffs Western Tradition Partnership—now known as American Tradition Partnership—Champion Painting, and Montana Shooting Sports Foundation (collectively referred to as ATP) sought a declaratory ruling that § 13-35-227(1), MCA, violated their rights to free speech guaranteed by the United States and Montana Constitutions by prohibiting political expenditures by corporations on behalf of or opposing candidates for public office. ATP argued that the U.S. Supreme Court's decision in *Citizens United v. FEC*, 558 U.S. 310, 130 S. Ct. 876 (2010), barred Montana from prohibiting independent and indirect

2

corporate expenditures on political speech, and that Montana's century-old ban on independent corporate expenditures therefore was invalid.

¶3 The Attorney General defended the law's constitutionality on the grounds that the law invalidated in *Citizens United* was distinguishable from the Montana statute, that corporate rights could not be asserted against states in the same manner as against Congress, and that Montana has a compelling interest in requiring business corporations to use segregated funds for campaign expenditures. The Attorney General argued that § 13-35-227(1), MCA, is narrowly tailored because it still allows for lobbying, testimony, and other direct contacts and that the Commissioner of Political Practices has interpreted the law to exclude voluntary associations.

¶4 The District Court entertained the parties' cross-motions for summary judgment. ATP's motion included a request for attorneys' fees under the Uniform Declaratory Judgments Act (UDJA), §§ 27-8-101 et seq., MCA, and under the private attorney general doctrine, first recognized by this Court in *In re Dearborn Drainage Area*, 240 Mont. 39, 43, 782 P.2d 898, 900 (1989). The court granted ATP's motion for summary judgment on the merits of its constitutional claim, denied the State's motion for summary judgment, declared § 13-35-227(1), MCA, unconstitutional, enjoined enforcement of the statute, and denied ATP's request for attorneys' fees. The Attorney General appealed the District Court's summary judgment rulings and ATP appealed the denial of its request for attorneys' fees.

¶5 On appeal, this Court reversed. A majority of the Court agreed with the Attorney General's position that *Citizens United* did not foreclose Montana from prohibiting independent corporate expenditures on behalf of candidates. Based on the record developed in the District Court, this Court concluded that the State had a compelling interest that justified the imposition of statutory restrictions that the Court determined were narrowly tailored to meet its objectives. *Western Tradition Partn.*, ¶¶ 47-48. We did not reach ATP's claim for fees, as it was mooted by our reversal of the District Court's summary judgment ruling. *Western Tradition Partn.*, ¶ 48. Two members of the Court dissented on the ground that Montana's statute did not pass constitutional muster under *Citizens United*. *Western Tradition Partn.*, ¶¶ 49-60 (Baker, J., dissenting), ¶¶ 61-135 (Nelson, J., dissenting). The U.S. Supreme Court summarily reversed, ruling that "[t]here can be no serious doubt" that the holding of *Citizens United* applies to the Montana statute. *American Tradition Partn.*, 567 U.S. at ___, 132 S. Ct. at 2491.

¶6 We return now to ATP's cross-appeal and consider whether it is entitled to recover its attorneys' fees from the State of Montana under either the UDJA or the private attorney general doctrine.[1] ATP seeks a total award of $138,403.01.

## STANDARD OF REVIEW

¶7 We review for abuse of discretion a district court's ruling granting or denying attorneys' fees under either the UDJA or the private attorney general doctrine. *Bitterroot*

---

[1] Although ATP's renewed motion for fees also seeks a fee award under 42 U.S.C. § 1988, as prevailing parties in a proceeding to enforce 42 U.S.C. § 1983, this argument was not raised in or decided by the District Court and we decline to consider it. *Robison v. Mont. Dep't of Revenue*, 2012 MT 145, ¶ 26, 365 Mont. 336, 281 P.3d 218.

4

*River Protective Ass'n v. Bitterroot Conserv. Dist.*, 2011 MT 51, ¶¶ 9-10, 359 Mont. 393, 251 P.3d 131.

## DISCUSSION

¶8 *Did the District Court abuse its discretion in declining to award attorneys' fees?*

¶9 Montana follows the American Rule that, absent a specific statutory or contractual provision, a prevailing party generally is not entitled to recovery of its attorneys' fees in prosecuting or defending the action. *Trustees of Ind. Univ. v. Buxbaum*, 2003 MT 97, ¶ 19, 315 Mont. 210, 69 P.3d 663. We have recognized equitable exceptions to the American Rule, *Buxbaum*, ¶ 19, but construe these exceptions narrowly "lest they swallow the rule." *Jacobsen v. Allstate Ins. Co.*, 2009 MT 248, ¶ 23, 351 Mont. 464, 215 P.3d 649. We have rejected the expansion of such equitable exceptions when the effect would "drive a stake into the heart of the American Rule." *Jacobsen*, ¶ 22 (quoting *Mountain West Farm Bureau Mut. Ins. Co. v. Brewer*, 2003 MT 98, ¶ 40, 315 Mont. 231, 69 P.3d 652).

### 1. Statutory Basis for Fees

¶10 Montana law provides that a prevailing party may recover attorneys' fees against the State of Montana only if "the court finds that the claim or defense of the state . . . was frivolous or pursued in bad faith." Section 25-10-711(1)(b), MCA. A claim or defense is frivolous or in bad faith "when it is 'outside the bounds of legitimate argument on a substantial issue on which there is a bona fide difference of opinion.'" *Ostergren v. Dept. of Revenue*, 2004 MT 30, ¶ 23, 319 Mont. 405, 85 P.3d 738 (quoting *Jones v. City of*

*Billings*, 279 Mont. 341, 344, 927 P.2d 9, 11 (1996), and *Armstrong v. State, Dept. of Justice*, 250 Mont. 468, 469-70, 820 P.2d 1273, 1274 (1991)). In this case, the District Court did not find the Attorney General's position to be frivolous or in bad faith. To the contrary, the court determined that the State's arguments "were made in good faith and were supported by briefs that were meticulously researched, well written, and well argued."

¶11 ATP argues that, despite its finding of good faith, the District Court erred by failing to award fees under § 27-8-313, MCA, which serves as statutory authority for an award of fees in this case. That section does not specifically provide for an award of attorneys' fees to a prevailing party, but does give a court the ability to grant "supplemental relief" in a case brought under the Uniform Declaratory Judgments Act when the court determines such relief to be "necessary or proper." *Wagner v. Woodward*, 2012 MT 19, ¶ 31, 363 Mont. 403, 270 P.3d 21 (citing *Buxbaum*, ¶ 42). While § 27-8-313, MCA, may provide a statutory basis for awarding fees, its reach is narrow. In order to avoid "eviscerat[ing]" the American Rule, we have determined that an award of fees to the prevailing party is not warranted "in every garden variety declaratory judgment action[.]" *Mungas v. Great Falls Clinic, LLP*, 2009 MT 426, ¶ 44, 354 Mont. 50, 221 P.3d 1230.

¶12 Accordingly, we have required courts analyzing a claim for fees in a declaratory judgment proceeding to make a threshold determination that equitable considerations support an award of attorneys' fees. *Mungas*, ¶ 45; *Hughes v. Ahlgren*, 2011 MT 189,

6

¶¶ 13, 21, 361 Mont. 319, 258 P.3d 439; *United Nat'l Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 2009 MT 269, ¶ 39, 352 Mont. 105, 214 P.3d 1260. If that threshold determination is met, we apply a three-part "tangible parameters test" to determine whether an award of fees is necessary or proper as required by § 27-8-313, MCA. *Renville v. Farmers Ins. Exch.*, 2004 MT 366, ¶ 27, 324 Mont. 509, 105 P.3d 280.[2] The District Court concluded that, although the Uniform Declaratory Judgments Act provided authority for an award of fees, the court did not find it "necessary and proper to do so in this case." Because equitable considerations also inform the analysis of ATP's claim for fees under the private attorney general doctrine, we will consider these arguments together.

### 2. Private Attorney General Doctrine

¶13 The private attorney general doctrine is one of a handful of equitable exceptions this Court has recognized to the American Rule. *Buxbaum*, ¶ 19. This doctrine "is normally utilized when the government, for some reason, fails to properly enforce interests which are significant to its citizens." *Montanans for the Responsible Use of the Sch. Trust v. State ex rel. Bd. of Land Comm'rs* (*Montrust*), 1999 MT 263, ¶ 64, 296 Mont. 402, 989 P.2d 800 (quoting *Dearborn Drainage Area*, 240 Mont. at 43, 782 P.2d at 900). It, too, has been invoked sparingly. Since first recognizing the doctrine in 1989, we have only twice used it to award or uphold the award of fees, and just once to a party

---

[2] The three factors are "(1) an insurance company possesses what the plaintiffs sought in the declaratory relief action; (2) it is necessary to seek a declaration showing that the plaintiffs are entitled to the relief sought; and (3) the declaratory relief sought was necessary in order to change the status quo." *Renville*, ¶ 27.

prevailing against the State. *Montrust*, ¶ 69 (fees awarded against the State); *Bitterroot River Protective Ass'n*, ¶ 37 (upholding award of fees against private parties).

¶14 We held in *Montrust* that three factors should be considered in determining whether to award fees under the private attorney general doctrine: "(1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, (3) the number of people standing to benefit from the decision." *Montrust*, ¶ 66 (quoting *Serrano v. Priest*, 569 P.2d 1303, 1314 (Cal. 1977)). We have limited the award of fees under the doctrine to cases "vindicating constitutional interests." *Bitterroot River Protective Ass'n*, ¶ 22. We have declined to apply the doctrine when the litigation primarily served a party's own pecuniary interests. *Sunburst Sch. Dist. No. 2 v. Texaco, Inc.*, 2007 MT 183, ¶ 91, 338 Mont. 259, 165 P.3d 1079. We also consider whether an award of fees would be unjust under the circumstances. *Finke v. State ex rel. McGrath*, 2003 MT 48, ¶ 33, 314 Mont. 314, 65 P.3d 576.

¶15 ATP argues that it has vindicated important free speech rights that benefit all Montana citizens and corporations and will result in adding more thoughts and views to the state's political discourse. The Attorney General, conversely, argues that there is substantial overlap between ATP's view of the public interest and its own pecuniary interests, and that the District Court was justified in declining to award fees in this case.

¶16 The constitutional principles underlying this litigation cannot be doubted. The U.S. Supreme Court's order reaffirmed that "political speech does not lose First

Amendment protection simply because its source is a corporation." *ATP v. Bullock*, 567 U.S. at ___, 132 S. Ct. at 2491 (quoting *Citizens United*, 558 U.S. at ___, 130 S. Ct. at 900). Our cases applying the private attorney general doctrine reflect the caution, however, "that the first factor not become for courts 'assessments of the relative strength or weakness of public policies furthered by their decisions . . . a role closely approaching that of the legislative function.'" *Bitterroot Protective Ass'n*, ¶ 22 (quoting *Serrano*, 569 P.2d at 1314). The separation of powers between the branches requires us to use the same caution to avoid interference with the executive function as well.

¶17 "The Attorney General is the legal officer of the state and shall have the duties and powers provided by law." Mont. Const. art. VI, § 4(4). It is the duty of the Attorney General "to prosecute or defend all causes in the supreme court in which the state or any officer of the state in the officer's official capacity is a party or in which the state has an interest." Section 2-15-501(1), MCA. As an executive officer of the State of Montana, the Attorney General determines when to prosecute or to defend cases in which the State has an interest. Thus, if a challenge is brought to a state statute, the Attorney General has discretion to decide whether or not to defend its constitutionality. *See In re W.C.*, 206 Mont. 432, 439, 671 P.2d 621, 624 (1983) (Attorney General does not have a duty to appear in every action concerning constitutionality of a statute); *Associated Press v. State of Mont.*, 250 Mont. 299, 820 P.2d 421 (1991) (noting Attorney General's concession that challenged statute was unconstitutional). The courts necessarily must use caution in awarding fees against the State in a "garden variety" declaratory judgment action that

9

challenges the constitutionality of a statute that the Attorney General, in the exercise of his executive power, has chosen to defend.

¶18    The legislature has cabined this executive discretion by authorizing the courts to impose fees when the State's defense is frivolous or in bad faith.  Section 25-10-711(1)(b), MCA.  While not dispositive, this standard also serves as a guidepost in analyzing a claim for fees under the private attorney general doctrine.  This Court reversed a fee award in *Dearborn Drainage Area* where, notwithstanding the ruling's potential "far reaching" effects, the State, through the Department of Fish, Wildlife and Parks, had "acted in good faith and in accordance with constitutional and statutory mandates" in representing the public's recreational use rights in the waters of Bean Lake. *Dearborn Drainage Area*, 240 Mont. at 43, 782 P.2d at 900.  In *Montrust*, on the other hand, we implied that since the private attorney general doctrine is an *equitable* exception to the American Rule, the statute was not controlling.  *Montrust*, ¶ 64.

¶19    *Montrust*, however, was not a "garden variety" constitutional challenge to a legislative enactment.  It involved unique issues raising the State's breach of fiduciary duties imposed by the Montana Constitution and federal enabling laws under which the federal government's grant of lands to Montana for support of common schools constitutes a trust for which the State is the trustee.  *Montrust*, ¶¶ 13-14.  As trustee, the State is obligated to obtain full market value for the school trust lands; the statutes in question were held to violate the State's constitutional obligation and its duty of undivided loyalty to the trust beneficiary.  *Montrust*, ¶¶ 14, 32, 42, 51, 58.  In contrast,

10

we observed in *Finke* that fees against the State would not be appropriate under the private attorney general doctrine where "the only potential liability of the State for fees would lie for the actions of the Legislature in enacting an unconstitutional bill." *Finke*, ¶ 34.

¶20 In this case, the District Court did not abuse its discretion in determining that the State mounted a good faith defense to § 13-35-227(1), MCA. While the Attorney General did not prevail, it is difficult to conclude that his arguments were frivolous when five members of this Court were convinced of their merit. In the final analysis, even though ATP vindicated principles of constitutional magnitude, the State's defense also was grounded in constitutional principles and in an effort to enforce interests the executive deemed equally significant to its citizens. The Attorney General defended a statute with deep roots in the State's history, enacted by initiative of the people to combat corruption that had resulted in the bribery of state judges and the embarrassment of seeing one of the State's U.S. Senators unseated for also accepting bribes. *Western Tradition Partn.*, ¶¶ 23, 25. The challenge was brought in a time of shifting legal landscapes, the contours of which still have not finally been defined. Under these circumstances, the predicate for an award of fees under the private attorney general doctrine—"when the government, for some reason, fails to properly enforce interests which are significant to its citizens"—has not been established.

**CONCLUSION**

¶21 We reverse a district court for abusing its discretion only "when it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason[,] resulting in substantial injustice." *B Bar J Ranch, LLC v. Carlisle Wide Plank Floors, Inc.*, 2012 MT 246, ¶ 10, 366 Mont. 506, ___ P.3d ___. For the reasons discussed above, and given the District Court's express determination that the State's defense was meticulously researched, well presented, and made in good faith, we cannot conclude that equitable considerations required it to award fees against the State under either the Uniform Declaratory Judgments Act or the private attorney general doctrine.

¶22 The District Court's order declining to award attorneys' fees to the Cross-Appellants is affirmed.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE

Justice James C. Nelson, dissenting.

¶23 I dissent from the Court's denial of attorneys' fees under the private attorney general doctrine. I believe the Court errs in three respects.

12

¶24 First, the District Court provided two distinct analyses of ATP's two distinct theories for seeking attorneys' fees: one under the private attorney general doctrine and the other under the Uniform Declaratory Judgments Act (§ 27-8-313, MCA). This Court provides *zero* analysis of the District Court's actual decision under the private attorney general doctrine. Moreover, the Court fails to conduct its own distinct analysis under this doctrine pursuant to the three *Montrust* factors. *See* Opinion, ¶ 14; *Montanans for the Responsible Use of the Sch. Trust v. State ex rel. Bd. of Land Commrs.* (*Montrust*), 1999 MT 263, ¶ 67, 296 Mont. 402, 989 P.2d 800. Instead, the Court merges the private attorney general analysis into the Uniform Declaratory Judgments Act analysis and thereby creates a sort of one-size-fits-all procedural "smoothie" for analyzing attorneys' fees requests under these two distinct doctrines.

¶25 Second, the Court further confuses matters by injecting § 25-10-711, MCA, into this case. That statute provides an *independent* basis for an award of attorneys' fees. It states:

> (1) In any civil action brought by or against the state, a political subdivision, or an agency of the state or a political subdivision, the opposing party, whether plaintiff or defendant, is entitled to the costs enumerated in 25-10-201 and reasonable attorney fees as determined by the court if:
> (a) the opposing party prevails against the state, political subdivision, or agency; and
> (b) the court finds that the claim or defense of the state, political subdivision, or agency that brought or defended the action was frivolous or pursued in bad faith.
> (2) Costs may be granted pursuant to subsection (1) notwithstanding any other provision of the law to the contrary.

Section 25-10-711, MCA. If ATP had sought an award of attorneys' fees pursuant to this provision, then ATP would have been required to show (a) that it prevailed against the State and (b) that the State's defense was "frivolous or pursued in bad faith." What the Court apparently fails to appreciate, however, is the fact that ATP did *not* seek an award of attorneys' fees based on this statute. ATP relied, rather, on the private attorney general doctrine and the Uniform Declaratory Judgments Act. Hence, ATP was not required to show that the State's defense was "frivolous or pursued in bad faith." It was required, rather, to establish the elements of the two doctrines upon which it relied.

¶26 Notably, the district court in *Montrust* denied an award of attorneys' fees under § 25-10-711, MCA, because the action involved "neither frivolous conduct, extreme conduct, nor bad faith by the State." *Montrust*, ¶ 60. On appeal, the State asserted the very proposition stated at ¶ 10 of today's Opinion—namely, that a prevailing party may recover attorneys' fees against the State *only if* the court finds that the claim or defense of the State was frivolous or pursued in bad faith. *See Montrust*, ¶ 63. In other words, the State suggested that § 25-10-711, MCA, is a blanket limitation on an award of attorneys' fees against the State under *any* theory—what the Court effectively holds in today's decision. The statute contains no such language, however, and we therefore rejected the State's proposition and instead adopted the private attorney general doctrine as a theory of recovery *distinct* from the entitlement to, and limitations on, an award of attorneys' fees under § 25-10-711, MCA. *See Montrust*, ¶¶ 64-67. We concluded that Montrust was entitled to attorneys' fees under the private attorney general theory, *regardless of the*

14

*district court's determination that the action involved "neither frivolous conduct, extreme conduct, nor bad faith by the State." Montrust*, ¶¶ 60, 69. The Court's contrary approach in its decision today throws this entire area of law into a state of utter disarray.

¶27 Third, the Court denies relief under ATP's *private attorney general theory* based entirely on a sentence in the District Court's order that was *not* part of the District Court's reasoning under that theory. Specifically, the District Court observed that "[t]he State's arguments were made in good faith and were supported by briefs that were meticulously researched, well written, and well argued." This statement might be relevant if ATP were pursuing a claim for attorneys' fees under § 25-10-711, MCA. ATP is not relying on this statute, however, as noted above. Furthermore, the District Court provided the foregoing quoted statement as its rationale for concluding that an award of attorneys' fees was not proper under ATP's *Uniform Declaratory Judgments Act theory*. The District Court provided an entirely separate analysis of the *private attorney general theory*; this Court simply chooses not to address the District Court's specific reasoning under that theory.

¶28 In short, and with due respect, I believe it is wrong—not to mention patently unfair—for this Court to reject ATP's argument for attorneys' fees based on the criteria of a statute (§ 25-10-711, MCA) that ATP never even invoked. *Cf. Western Sec. Bank v. Eide Bailly LLP*, 2010 MT 291, ¶¶ 73, 81, 359 Mont. 34, 249 P.3d 35 (Nelson, J., concurring in part and dissenting in part) ("It will surely come as a surprise to Glacier, however, when it learns that it has lost this case because it failed to adequately support a claim that it never even raised! . . . It is unfair to remake a plaintiff's cause of action into

15

something it never was intended to be and then to deny the plaintiff relief for failing to adequately support this remade cause."). The Court completely muddles this area of law by blending the private attorney general doctrine and the Uniform Declaratory Judgments Act doctrine into a single analysis and then superimposing on that analysis the "frivolous or pursued in bad faith" criterion of § 25-10-711, MCA—contrary to our approach in *Montrust*. With this Opinion, we have effectively done away with the private attorney general doctrine. Like the majority of the United States Supreme Court in *Citizens United v. FEC*, 558 U.S. 310, 130 S. Ct. 876 (2010), this Court has now remade this case so as to remake the law pertaining to the private attorney general doctrine.

¶29 For the reasons which follow, I conclude and would hold that ATP is entitled to an award of attorneys' fees under a proper application of the criteria of the private attorney general doctrine, as set forth in *Montrust*.

**The Private Attorney General Doctrine**

¶30 This Court adopted the private attorney general doctrine in *Montrust*, ¶ 67. There are three factors to be considered in awarding attorneys' fees under this doctrine: (1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, and (3) the number of people standing to benefit from the decision. *Montrust*, ¶ 66 (citing *Serrano v. Priest*, 569 P.2d 1303, 1314 (Cal. 1977)).

¶31 In the present case, the District Court concluded under the first factor that the issues here are clearly very important. Second, the District Court reasoned that because

16

the Attorney General is required to defend the statute in question, private enforcement of the important constitutional rights at issue was required. Third, however, although the District Court had ruled in favor of ATP on the merits of its constitutional claim, the court opined that "there is no reasonable way of knowing 'the number of *people*' standing to benefit from this decision" (emphasis in original). For this latter reason, the District Court denied an award of attorneys' fees under the private attorney general doctrine.

¶32 While I agree with the District Court's analysis as to the first factor, and agree with the District Court's ultimate conclusion under the second factor, I do not agree with the District Court's reasoning regarding the third factor. In my view, ATP has successfully answered all three factors. I address each one in turn.

**Factor 1**

¶33 First, as to the strength or societal importance of the public policy vindicated by the litigation, it is hardly open to argument that ATP's lawsuit secured against the proscriptions of Montana's Corrupt Practices Act (in particular, § 13-35-227, MCA) the expansive right of corporations and associations—as decreed by the United States Supreme Court under the First Amendment in *Citizens United*—to use general treasury funds to make independent expenditures expressly advocating the election or defeat of candidates. Absent this challenge, corporations and associations remained constrained and inhibited from making such independent expenditures in support of or against candidates in Montana. Moreover, as the Ninth Circuit has recently held, the loss of such First Amendment freedoms, for even minimal periods of time, constitutes irreparable

17

injury. *Sanders County Republican Cent. Comm. v. Bullock*, 698 F.3d 741, 748 (9th Cir. 2012).

**Factor 2**

¶34 Second, as to the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, the Attorney General's decision to defend the Corrupt Practices Act left ATP with no choice but to litigate its rights under *Citizens United.* Indeed, ATP took on the burden of vindicating the First Amendment rights of every corporation, association, and person[1] in the State of Montana.

¶35 In this regard, I note my disagreement with the District Court's reasoning that this is a case in which the Attorney General was "required to defend the statute." I appreciate that it is the Attorney General's duty, generally, to defend the State and argue the validity of state statutes against attack. *See* § 2-15-501, MCA. However, as the Court points out, the Attorney General has discretion in this regard and has even conceded that a challenged statute was unconstitutional. Opinion, ¶ 17; *In re W.C.*, 206 Mont. 432, 439, 671 P.2d 621, 624 (1983); *Associated Press v. State*, 250 Mont. 299, 300, 820 P.2d 421, 422 (1991). In the present case, given the clarity and breadth of the *Citizens United* decision and the fact that the Supreme Court in *Citizens United* rejected every one—not just some, but *all*—of the arguments for upholding § 13-35-227, MCA,[2] I cannot

---

[1] I use the term "person" here deliberately, for reasons explained under the third factor.

[2] *See Am. Tradition Partn. v. Bullock*, ___ U.S. ___, 132 S. Ct. 2490, 2491 (2012) (per curiam) ("Montana's arguments in support of the judgment below either were already rejected in *Citizens United*, or fail to meaningfully distinguish that case.").

18

understand how, much less agree with the proposition that, the Attorney General had any substantial grounds to defend the statute against ATP's challenge. Nor can I agree with the Court's suggestion that ATP's challenge was brought in a time of "shifting legal landscapes." Opinion, ¶ 20. The Supreme Court was very clear as to the breadth of its holding in *Citizens United*. The Attorney General, like other elected officials of this State, takes an oath to "support, protect and defend the constitution of the United States . . . ." Mont. Const. art. III, § 3. The Constitution of the United States, as interpreted by the Supreme Court in *Citizens United*, is "the supreme Law of the Land . . . , any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. I am not going to repeat my analysis in *Western Tradition Partn., Inc. v. Atty. Gen. of Montana*, 2011 MT 328, ¶¶ 61-135, 363 Mont. 220, 271 P.3d 1 (Nelson, J., dissenting). Suffice it to say that, in my view, such analysis could just as easily have been undertaken and adopted by the Attorney General (as a host of other state attorneys general did), with the result that ATP's litigation in the District Court would not have been necessary, ATP's appeal to this Court would not have been necessary, and ATP's appeal to the Supreme Court of the United States would not have been necessary.

¶36 In any event, the important point is that the Attorney General's decision to defend the law made it necessary for ATP to enforce its rights under *Citizens United*. As for the magnitude of the resultant burden on the plaintiff, the State contends that ATP's burden was negligible because ATP's attorneys "litigated this case only minimally. Plaintiffs conducted no discovery, swore out a couple of bare-bones affidavits, and in their two

19

summary judgment briefs below made no legal arguments not already contained within the *Citizens United* opinion itself." According to the State, "[t]his is far from the typical case of private attorney general doctrine fee awards, which involves 'significant legal costs' resulting from extensive discovery, expert testimony, and often trial."

¶37 There are two flaws in the State's argument. First, the magnitude of the resultant burden on the plaintiff must be considered in relative terms. Here, the burden on ATP was significant if one considers that ATP should not have been forced to pursue this action in the first place. According to the Supreme Court, the Attorney General's arguments for upholding § 13-35-227(1), MCA, "either were already rejected in *Citizens United*, or fail to meaningfully distinguish that case." *Am. Tradition*, 132 S. Ct. at 2491. Yet, despite the clarity and breadth of the *Citizens United* decision, the Attorney General took the position that Montana's ban on independent expenditures is constitutional and enforceable. Regardless of the Attorney General's rationale behind this decision, the undisputed result was that ATP had to incur the burden of litigating its rights—not only in the District Court, but also in appeals to this Court and the Supreme Court—against arguments that "either were already rejected in *Citizens United*, or fail to meaningfully distinguish that case." *Am. Tradition*, 132 S. Ct. at 2491. In my view, given these facts, the magnitude of the burden was great.

¶38 Second, even assuming, for the sake of argument, that ATP's burden was "minimal," adopting the State's approach would give plaintiffs in these sorts of cases an incentive to run up "significant legal costs"—even if the costs are unnecessary—in order

20

to strengthen their claim for attorneys' fees under the private attorney general doctrine. In a case, such as the present one, which otherwise qualifies under that doctrine, the plaintiff should not be penalized for failing to incur "significant legal costs" in the process. It is truly ironic that the State is here complaining that ATP's legal bills are not high enough. Such an approach to the private attorney general doctrine would not be in the taxpayers' best interests.

¶39 For the foregoing reasons, I would hold that the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff weigh in ATP's favor. The Supreme Court spoke unequivocally in *Citizens United*; Montana chose to challenge the application of *Citizens United* to Montana; and, predictably, Montana lost. Montana should not now be heard to argue that ATP is not entitled to its attorneys' fees for successfully litigating a case that, in my view, ATP should not have been forced to litigate in the first place.

**Factor 3**

¶40 Finally, the third factor concerns the number of people standing to benefit from the decision. There is no question that every corporation and association in Montana—and, due to ATP's appeal to the Supreme Court, every corporation and association in the United States—benefited from ATP's filing and pursuance of this litigation. As a result of the instant lawsuit, each corporation and association has been guaranteed the ability to exercise, at the state level, the rights decreed in *Citizens United*, given that the Supreme Court's reversal of this Court's decision removed any lingering doubt—implausible as

that doubt may have been[3]—about whether the application of *Citizens United* was limited to federal elections. *See Am. Tradition*, 132 S. Ct. at 2491 ("The question presented in this case is whether the holding of *Citizens United* applies to the Montana state law. There can be no serious doubt that it does." (citing the Supremacy clause, U.S. Const., art. VI, cl. 2)).

¶41 As noted, the District Court concluded that the third factor was not met because "there is no reasonable way of knowing 'the number of *people*' standing to benefit" from the District Court's ruling in favor of ATP on the merits of its constitutional claim (emphasis in original). The District Court, however, cited no authority for its apparent premise that the term "people" in *Montrust*'s third factor is limited to human beings. The District Court, it appears, simply assumed this to be true without analysis.

¶42 Setting aside the controversial question whether corporations and associations are "persons," however, the District Court overlooked a fundamental point of the *Citizens United* decision. As I recently discussed in *Montanans Opposed to I-166 v. Bullock*, 2012 MT 168, ¶¶ 20-25, 365 Mont. 520, 285 P.3d 435 (Nelson, J., dissenting), *Citizens United* was not just about the rights of *corporations* and *associations* to speak. More importantly, it was about the rights of *citizens* to hear and obtain information about candidates from diverse sources without governmental censorship. Indeed, the *Citizens United* decision rested on two propositions: first, that expenditures (by a person or an

---

[3] *See Citizens United*, 130 S. Ct. at 903 (noting that a *state* ban on corporate independent expenditures would be unconstitutional under the longstanding principle that "the First Amendment does not allow political speech restrictions based on a speaker's corporate identity").

organization) on political communication are a form of "speech"; and second, that "citizens [have the right] to inquire, *to hear*, to speak, and to use information to reach consensus." *Citizens United*, 130 S. Ct. at 898 (emphasis added). These propositions were not created in *Citizens United*. Rather, they can be traced to *Buckley v. Valeo*, 424 U.S. 1, 96 S. Ct. 612 (1976) (per curiam), and *First Natl. Bank v. Bellotti*, 435 U.S. 765, 98 S. Ct. 1407 (1978).

¶43     Of particular significance to the present discussion, the Supreme Court observed in *Bellotti* that

> [t]he court below framed the principal question in this case as whether and to what extent corporations have First Amendment rights. We believe that the court posed the wrong question. *The Constitution often protects interests broader than those of the party seeking their vindication.* The First Amendment, in particular, serves significant societal interests. The proper question therefore is not whether corporations "have" First Amendment rights and, if so, whether they are coextensive with those of natural persons. Instead, the question must be whether [the state statute at issue] abridges expression that the First Amendment was meant to protect.

435 U.S. at 775-76, 98 S. Ct. at 1415 (emphasis added). The *Bellotti* Court stated further that "[t]he inherent worth of the speech in terms of its capacity for informing the public does not depend upon the identity of its source, whether corporation, association, union, or individual," 435 U.S. at 777, 98 S. Ct. at 1416, and that "the First Amendment goes beyond protection of the press and the self-expression of individuals to prohibit government from *limiting the stock of information from which members of the public may draw*," 435 U.S. at 783, 98 S. Ct. at 1419 (emphasis added).

¶44     Likewise, the Supreme Court stated in *Citizens United* that "it is inherent in the nature of the political process that *voters* must be free *to obtain information* from diverse

23

sources in order to determine how to cast their votes" and that the First Amendment does not allow "the exclusion of a class of speakers from the general public dialogue." 130 S. Ct. at 899 (emphases added). The Supreme Court observed that the First Amendment protects the "open marketplace" of ideas, *Citizens United*, 130 S. Ct. at 899, and prohibits restrictions on political speech based on the speaker's identity, *Citizens United*, 130 S. Ct. at 902-03. Because voters must be free to obtain information from diverse sources, it is a violation of the First Amendment to control expression by distinguishing among different speakers and the subjects upon which they may speak. *Citizens United*, 130 S. Ct. at 898-99. The Supreme Court held that this country's law and tradition require more expression, not less, *Citizens United*, 130 S. Ct. at 911, and that "[w]hen Government seeks to use its full power, including the criminal law, to command *where a person may get his or her information or what distrusted source he or she may not hear*, it uses censorship to control thought," *Citizens United*, 130 S. Ct. at 908 (emphasis added).

¶45 Clearly, then, the constitutional rights protected by the *Citizens United* decision are not just those of corporations; they are those of "people." And the District Court was clearly wrong, therefore, in suggesting that "people" do not stand to benefit from the District Court's decision in favor of ATP or that there is no reasonable way of knowing "the number" of people standing to benefit from that decision. As a matter of federal constitutional law, *all* Montana citizens—at least, every *voter* in Montana—benefitted from the District Court's decision in favor of ATP under *Citizens United*. By virtue of the District Court's decision, which the Supreme Court has now tacitly affirmed, the

24

State of Montana may not "use its full power, including the criminal law, to command where a person may get his or her information or what distrusted source he or she may not hear." *Citizens United*, 130 S. Ct. at 908. The State no longer may "limit[ ] the stock of information from which members of the public may draw" when making their electoral decisions. *Bellotti*, 435 U.S. at 783, 98 S. Ct. at 1419. ATP's successful lawsuit vindicated not only the rights of corporations and associations to make independent expenditures in support of or against candidates, but also the First Amendment rights of the "people" of Montana to receive information about candidates from diverse sources without governmental censorship.[4]

**Conclusion**

¶46   Based on the foregoing analysis, I conclude that the private attorney general doctrine applies to ATP's lawsuit. Accordingly, I would reverse the District Court's denial of attorneys' fees. I would remand for a factual determination of ATP's attorneys' fees and for the entry of judgment in ATP's favor and against the State. I disagree with this Court's contrary decision.

---

[4] While I accept, and agree with, the principle that the government does not have the power "to command where a person may get his or her information or what distrusted source he or she may not hear," *Citizens United*, 130 S. Ct. at 908, I still have concerns about the ability of corporations, associations, and those with extreme wealth to drown out other voices. *Western Tradition*, ¶ 127 (Nelson, J., dissenting). In my view, the protections of the First Amendment, as with other constitutional provisions, ought to be balanced. *Western Tradition*, ¶ 130 (Nelson, J., dissenting). In this respect, while all speakers—corporations, associations, and individuals alike—have the right to contribute to the "open marketplace" of ideas, *Citizens United*, 130 S. Ct. at 899, no one contributor should be able to monopolize the marketplace to the exclusion of other potential contributors. There can be no open exchange of ideas and debate if some of the parties to the conversation cannot afford to get a word in edgewise.

¶47    I dissent.

/S/ JAMES C. NELSON